**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNIVERSITY OF CALIFORNIA STUDENT ASSOCIATION,<br>    1020 12th Street, Suite 232,<br>    Sacramento, CA 95814,<br><br>*Plaintiff*,<br><br>v.<br><br>DENISE CARTER, in her official capacity as Acting Secretary of Education,<br>    400 Maryland Avenue, SW<br>    Washington, DC 20202,<br><br>and<br><br>U.S. DEPARTMENT OF EDUCATION,<br>    400 Maryland Avenue, SW<br>    Washington, DC 20202,<br><br>*Defendants*. | Civil Action No. 25-354 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.  Plaintiff University of California Student Association files this action against Defendants Denise Carter, in her official capacity as Acting Secretary of Education, and the United States Department of Education (ED), for declaratory and injunctive relief to halt Defendants' unlawful ongoing, systematic, and continuous disclosure of sensitive personal and financial information contained in ED's records to the so-called "Department of Government Efficiency" (DOGE) or to any other person.

2.  More than 42 million federal people in the United States—approximately 12.5% of the entire United States population—have federal student loans. For each of these borrowers,

1

ED collects and maintains sensitive personal and financial information, including "[their] name, Social Security number (SSN), date of birth, student loan account information, contact information, driver's license number, and financial information."[1]

3.      ED also captures and stores personal and financial information for the parents of dependent student-loan applicants and for the spouses of married applicants, as well as student demographic information, such as citizenship, dependency status, veteran status, marital status, gender, and income and asset information.

4.      ED collects this information "throughout the student aid lifecycle—when [students] apply for federal student aid, complete a Master Promissory Note (MPN), complete loan and grant counseling (such as Entrance, Exit, and Financial Awareness Counseling), apply for an income-driven repayment plan, or consolidate [their] student loans."[2]

5.      Most of this information is stored in a system of records called the National Student Loan Database (NSLDS), which is "the national database of information about loans and grants awarded to students under Title IV of the Higher Education Act (HEA)" and which "provides a centralized, integrated view of Title IV loans and grants during their complete life cycle, from aid approval through disbursement, repayment, deferment, delinquency, and closure."[3] These and other sensitive personal records are also stored in other systems of records, including the Common Origination and Disbursement System (COD), the FUTURE Act System (FAS), and the Financial Management System (FMS), among others.

---

[1] *See Privacy Policy for StudentAid.gov*, Federal Student Aid, https://studentaid.gov/notices/privacy (last visited Feb. 6, 2025).

[2] *Id.*

[3] *See Frequently Asked Questions (FAQs)*, Federal Student Aid, https://nsldsfap.ed.gov/help/faq (last visited Feb. 6, 2025).

6.     ED's electronic databases are also the mechanism by which institutions of higher education report student-specific information to satisfy their compliance obligations with ED's Financial Value Transparency and Gainful Employment regulations. These regulations require institutions—which are subject to a separate set of privacy requirements under the Family Educational Rights and Privacy Act—to provide detailed information about certain postsecondary programs and enrollees, including student names, social security numbers, enrollment dates, enrollment status, cost of attendance, tuition and fees paid, scholarship information, and other information, including "any other information the Secretary requires the institution to report." *See* 34 C.F.R. § 668.408(a)(2)–(4).

7.     In seeking federal financial assistance to further their dreams of higher education, students are not asked to agree, and do not agree, that ED can share their sensitive information for purposes other than loan processing and servicing. ED has repeatedly represented to students that information they submit in conjunction with the Free Application for Federal Student Aid (FAFSA) will be protected. Likewise, the "Master Promissory Note" that students execute to borrow federal Direct Loans provides that ED will "disclose nonpublic personal information to third parties only as necessary to process and service [the] loan and as permitted by the Privacy Act of 1974."[4] ED has made similar representations to borrowers who seek to take advantage of loan repayment programs administered by ED, inducing borrowers to consent to providing access to certain tax information by promising that such information will only be used for limited purposes.[5]

---

[4] U.S. Department of Education, Master Promissory Note (MPN) (Nov. 2019), https://studentaid.gov/sites/default/files/Sub_Unsub_MPN_508-en-us.pdf.

[5] *E.g.*, *Income-Driven Repayment (IDR) Plan Request*, Federal Student Aid, https://studentaid.gov/idr/application/demo/consent (last visited Feb. 6, 2025).

3

8. These commitments by ED are not a matter of agency largesse. Rather, they are required by federal law, including the Privacy Act, the Internal Revenue Code, and ED regulations—each of which protects students' sensitive personal and financial information from improper disclosure and misuse, including by barring disclosure to individuals who lack a lawful and legitimate need for it.

9. Despite's ED's representations that it "is committed to protecting the privacy rights of all individuals whose information it maintains,"[6] recent events demonstrate otherwise. According to public reporting, Defendants have violated the applicable statutory and regulatory restrictions by granting DOGE-affiliated individuals access to ED's sensitive internal systems that house federal student financial aid information. Defendants have done so without making any public announcement, providing any legal justification or explanation for this decision, or undertaking the process required by law for altering the agency's disclosure policies.

10. The scale of the intrusion into individuals' privacy is enormous and unprecedented. The personal data of over 42 million people lives in these systems. These are people who trusted ED with their sensitive personal information when they filled out the FAFSA and applied for federal student loans and grants, in reliance on the agency's rules and other representations.

11. Defendants' action granting DOGE-affiliated individuals continuous and ongoing access to that information for an unspecified period of time means that millions of Americans from all walks of life have no assurance that their sensitive information—and that of their parents and/or spouses—will receive the protection that federal law affords. And because Defendants' actions and decisions are shrouded in secrecy, individuals do not have even basic

---

[6] *Student Privacy Policy Office*, U.S. Department of Education, https://www.ed.gov/about/ed-offices/opepd/student-privacy-policy-office (last visited Feb. 6, 2025).

information about what personal or financial information Defendants are sharing with outside parties or how their information is being used.

12. People who take out federal student loans to afford higher education should not be forced to share their sensitive information with "DOGE." And federal law says they do not have to. As ED has acknowledged, the Privacy Act of 1974 and the Internal Revenue Code both make it unlawful for Defendants to hand over access to financial aid records to DOGE. Plaintiff files this action to put an immediate stop to Defendants' systematic, continuous, and ongoing violation of federal laws that protect the privacy of personal information contained in federal records. This Court's exercise of equitable authority is the only adequate avenue available to Plaintiff's members to protect the data that they, and millions of others, have provided to the federal government.

## JURISDICTION AND VENUE

13. This Court has statutory jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, namely, the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 706, and 28 U.S.C. § 1361.

14. Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(A) because Defendants are officers and agencies of the United States, at least one defendant is headquartered in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

15. Plaintiff University of California Student Association (UCSA) is a nonprofit public benefit association organized under California law and headquartered in Sacramento, California. USCA has over 230,000 members, each of whom are undergraduate students at the

University of California's nine undergraduate campuses. UCSA was formed to serve the interests of the current and future students of the University of California. More than 70% of UCSA's members currently receive federal financial aid via a variety of programs, including Pell Grants, federal work-study, Supplemental Educational Opportunity Grants, and various federal loan programs. To participate in these programs, UCSA members provided ED with detailed personal information.

16. Defendant Denise Carter is the Acting Secretary of Education and is sued in her official capacity.

17. Defendant United States Department of Education is an agency of the United States.

**FACTS**

**Defendants' Collection and Maintenance of Information on Individuals**

18. Defendants are responsible for managing the federal student loan system.

19. StudentAid.gov is owned and operated by Federal Student Aid (FSA), an office of ED. According to its privacy policy, "FSA is strongly committed to maintaining the privacy of your personal information."[7]

20. Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070 *et seq.*, authorizes FSA to request and collect sensitive personal information to determine eligibility for and administer federal student aid. Among other things, FSA "require[s] PII such as your name, Social Security number (SSN), date of birth, student loan account information, contact information, driver's license number, and financial information throughout the student aid

---

[7] *See* Federal Student Aid, *supra* note 1, at 2.

lifecycle."[8] In addition to collecting SSNs from the aid applicant, FSA also collects SSNs for the parents of a dependent applicant and for the spouse of a married applicant.[9]

21. To operate the federal student aid system, Defendants must collect and maintain this personal and financial information for all borrowers.

22. As a federal agency, ED is subject to the requirements of the Privacy Act, 5 U.S.C. § 552a, with respect to records that it maintains on individuals.

23. Under the Privacy Act, an agency must prepare a notice in the Federal Register "of the existence and character of the system of records" when such a system is established or revised.[10] This notice is referred to as a System of Records Notice, or SORN. At least 30 days before publishing a SORN, an agency must "publish in the Federal Register notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency."[11]

24. The Privacy Act requires a SORN to disclose, among other things, "the categories of individuals on whom records are maintained in the system," "the categories of records maintained in the system," "each routine use of the records contained in the system, including the categories of users and the purpose of such use," and "the policies and practices of the agency regarding storage, retrievability, access controls, retention, and disposal of the records."[12]

25. When ED employees or other authorized users access FSA systems, they receive a warning that those systems may contain personal information protected by the Privacy Act of

---

[8] *Id.*

[9] *See* Federal Student Aid, 2025-26 FAFSA Form at 4, https://studentaid.gov/sites/default/files/2025-26-fafsa.pdf.

[10] 5 U.S.C. § 552a(e)(4).

[11] *Id.* § 552a(e)(11).

[12] *Id.* § 552a(e)(4).

1974, and that by accessing the systems, they are consenting to be bound by the Act's requirements. To access the systems, users must check a box agreeing to adhere to the requirements of the Privacy Act.

26. ED employees and other authorized users who access FSA systems must also acknowledge receipt of and compliance with the applicable "Rules of Behavior." One such rule requires users to protect all FSA information in their possession from access by, or disclosure to, unauthorized personnel.

*National Student Loan Database (NSLDS)*

27. The SORN for NSLDS was published in the Federal Register on May 21, 2024.[13]

28. NSLDS is the "the national database of information about loans and grants awarded to students under Title IV of the Higher Education Act (HEA)," which "provides a centralized, integrated view of Title IV loans and grants during their complete life cycle, from aid approval through disbursement, repayment, deferment, delinquency, and closure."[14]

29. Records stored in NSLDS include, but are not limited to:

> (1) aid applicant and recipient identifier information, including SSN, name, date of birth, physical address, phone number, email address, and driver's license number and State of issuance;
>
> (2) aid applicant demographic information, including an aid applicant's parent's and spouse's demographic information (if applicable), student enrollment, incarcerated student indicator flag, list of participating title IV, HEA institutions of higher education selected by the aid applicant to receive the Free Application for Federal Student Aid (FAFSA®) data along with residency plans, and the financial profile of an applicant and an aid applicant's parent(s) or spouse, as reported and calculated through the FAFSA form; and processing flags, indicators, rejections, and overrides;

---

[13] *See* 89 Fed. Reg. 44652.
[14] *See* Federal Student Aid, *supra* note 3, at 2.

(3) information on the aid recipient's loan(s) covering the period from the origination of the loan through final payment, consolidation, discharge, or other final disposition, including details such as loan amount, disbursements, balances, loan status, repayment plan payments and related information, collections, claims, deferments, forbearances, refunds, and discharges;

(4) information on an aid applicant's or recipient's endorser or co-signer of a PLUS loan application from the origination of the loan through final payment, consolidation, discharge, or other final disposition, including details such as co-signer SSN, name, date of birth, driver's license number and State of issuance (if reported), active-duty status (if applicable and reported), email address, address, phone number, and relevant loan information with respect to the loan on which they are the endorser or co-signer;

. . .

(7) student demographic information, such as dependency status, citizenship, veteran status, marital status, gender, income and asset information (including income and asset information on the student's spouse, if married), and expected family contribution or Student Aid Index (SAI);

(8) information on the parent(s) of a dependent aid applicant or aid recipient or the spouse of an independent aid applicant or aid recipient, including name, date of birth, SSN, marital status, email address, highest level of schooling completed and starting with award year 2024–2025, the parents' college attendance status, and income and asset information;

. . .

(13) NSLDS user profiles that include name, SSN, date of birth, employer, and NSLDS username.[15]

### *Common Origination and Disbursement System (COD)*

30.     The SORN for COD was published in the Federal Register on June 28, 2023.[16]

---

[15] 89 Fed. Reg. 44652, 44656–57.

[16] 88 Fed. Reg. 41942.

31. COD supports the origination, disbursement, and reporting for all Title IV programs.

32. COD contains records for aid applicants and recipients, as well as their parents, spouses, and endorsers, who apply to any of the Title IV programs, including the Pell Grant, Perkins Loan, Academic Competitiveness Grant, National Science and Mathematics Access to Retain Talent Grant, Teacher Education Assistance for College and Higher Education Grant, Iraq and Afghanistan Service Grant, Direct Loan, Federal Family Education Loan, Federal Insured Student Loan, Federal Work-Study, and Federal Supplemental Educational Opportunity Grant programs.[17]

33. For each individual in those categories, records stored in COD include name, SSN, date of birth, mailing address, email address, driver's license number, and telephone number, as well as demographic and financial information. Records also include credit report information for Federal Direct PLUS Loan applicants, recipients, and endorsers, as well as information about Public Service Loan Forgiveness (PSLF) qualifying employers and their contact information.[18]

*FUTURE Act System (FAS)*

34. The SORN for the FUTURE Act System (FAS) was published in the Federal Register on June 29, 2023.[19]

35. FAS contains records on aid applicants and recipients, as well as their parents and spouses, who apply for Direct Loans, Pell Grants, and Federal Work-Study, in order to determine eligibility and amount. FAS also contains records on aid applicants and recipients, as well as

---

[17] *Id.* at 41947.
[18] *Id.* at 41948–49.
[19] *See* 88 Fed. Reg. 42220.

their parents and spouses, who apply for Income-Driven Repayment (IDR) Plans, to determine eligibility and repayment obligations.[20]

36.     FAS stores the information that those individuals provide on the FAFSA or on the IDR Application, including last name, date of birth, and SSN or Tax Identification Number. It also includes Federal Tax Information (FTI), such as income, filing status, exemptions, and tax credits.[21]

*Financial Management System (FMS)*

37.     The SORN for the Financial Management System (FMS) was published in the Federal Register on January 2, 2008.[22]

38.     FMS contains, among other things, records for borrowers who are eligible to receive refunds from ED for overpayments or discharges of their Title IV student aid.[23] Borrowers may qualify for loan discharges for a wide range of reasons, including that they have a total and permanent disability, that they were victims of forgery on the loan forms, or that the school misled them or violated the law.

39.     FMS contains personally identifiable information, including names, addresses, phone numbers, digital signatures, hand signatures, banking information (including routing IDs and account numbers), and SSNs (or Tax Identification Numbers).[24]

40.     FMS is operated by ED and exchanges data with a host of other data platforms used by ED, including COD and NSLDS.

---

[20] *Id.* at 42223.
[21] *Id.*
[22] 73 Fed. Reg. 177.
[23] *Id.* at 177, 179.
[24] *Id.*

**Limitations on ED's Disclosures**

41. For all four of these systems of records, and several others used by ED, the Privacy Act prohibits the disclosure of a record about an individual to any person or another agency unless "the individual to whom the record pertains" consents or a statutory exception applies.[25]

42. One exception to the Privacy Act's prohibition on disclosure allows disclosure to "those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties."[26]

43. Another exception permits disclosure for a "routine use" if the agency describes the routine use in a SORN.[27] ED's SORNs, including the SORNs for NSLDS, CODS, and FAS, specify the routine uses for which records on individuals may be disclosed.

44. ED has adopted regulations, codified at 34 C.F.R. part 5b, which incorporate the Privacy Act's restrictions on access to covered records and set out detailed procedures to be followed before and after individuals are given access to records.

45. Because the FAS system contains "FTI that [ED] receives from the IRS in accordance with the [Internal Revenue Code],"[28] ED is subject to the confidentiality requirements of the Internal Revenue Code, 26 U.S.C. § 6103. Section 6103 provides that "[r]eturns and return information shall be confidential," and cannot be disclosed by a federal officer or employee unless authorized by statute. Return and return information include the taxpayer's identity, mailing address, Tax Identification Number, claims for refund, and other

---

[25] 5 U.S.C. § 552a(b).
[26] *Id*. § 552a(b)(1).
[27] *Id*. § 552a(b)(3).
[28] 88 Fed. Reg. 42220 (June 29, 2023).

12

information on tax returns.[29] Section 6103 explicitly authorizes the IRS to disclose return information to ED, but explicitly limits the purposes for which that information may be used or redisclosed.[30]

46.     ED has repeatedly and consistently represented to students who submit sensitive personal information as part of the FAFSA, IDR, MPN, and other processes that it will keep that information private and only make disclosures consistent with the Privacy Act and section 6103(*l*).

**Defendants' Disclosure of Federal Student Aid Records on Individuals to DOGE**

47.     President Trump was inaugurated on January 20, 2025. The same day, he issued an executive order establishing a so-called "Department of Government Efficiency." Under the executive order, the United States Digital Service was renamed the United States DOGE Service (USDS), and a "temporary organization" was established under 5 U.S.C. § 3161 entitled "the U.S. DOGE Service Temporary Organization."

48.     The executive order directs the USDS Administrator to "work with Agency Heads to promote inter-operability between agency networks and systems, ensure data integrity, and facilitate responsible data collection and synchronization." It also directs agency heads to "take all necessary steps, in coordination with the USDS Administrator and to the maximum extent consistent with law, to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems." The executive order "displaces all prior executive orders and regulations, insofar as they are subject to direct presidential amendment, that might serve as a barrier to providing USDS access to agency records and systems as described above."

---

[29] *Id.* § 6103(b)(1), (2), (6).
[30] *Id.* § 6103(*l*)(13); *see also* 20 U.S.C. § 1098h (specifying procedure by which ED may obtain and redisclose information pursuant to section 6103(*l*)(13).

49. Since his inauguration, President Trump has not formally identified the individual who would serve as USDS Administrator or the full list of individuals that are part of the U.S. DOGE Service Temporary Organization.

50. During the presidential campaign, President Trump announced that entrepreneur Elon Musk would have a leadership role in DOGE. It is widely reported that, since the inauguration, Mr. Musk has played a leadership role in DOGE activities across the federal government.

51. While Mr. Musk is reportedly a "Special Government Employee" in the Executive Branch, he is not an employee of ED or the IRS. The Trump administration also has not publicly revealed the employment status of other individuals who are part of DOGE.

52. On information and belief, as of February 3, 2025, there were roughly 20 people affiliated with DOGE working with ED.[31]

53. At least some of these DOGE staffers have reportedly "gained access to multiple sensitive internal systems . . . including a financial aid dataset that contains the personal information for millions of students enrolled in the federal student aid program."[32] Additional reporting has indicated that DOGE representatives are feeding sensitive data from ED's systems into artificial intelligence systems maintained by third parties and subject to significant security risks.[33]

---

[31] *See* Laura Meckler et al., *Trump preps order to dismantle Education Dept. as DOGE probes data*, The Washington Post (Feb. 3, 2025), https://www.washingtonpost.com/education/2025/02/03/trump-education-department-dismantling-executive-order-draft/.

[32] *Id.*; *see also* Jeff Stein et al., *U.S government officials privately warn Musk's blitz appears illegal*, The Washington Post (Feb. 4, 2025), https://www.washingtonpost.com/business/2025/02/04/elon-musk-government-legal-doge/ (reporting that representatives of DOGE "have gained access to federal student loan data, which includes personal information for millions of borrowers").

[33] Hannah Natanson, et al*., Elon Musk's DOGE is feeding sensitive federal data into AI to target cuts*, The Washington Post (Feb. 6, 2025), https://www.washingtonpost.com/nation/2025/02/06/elon-musk-doge-ai-department-education/.

54. This unprecedented access to sensitive information—for purposes not specified in the relevant SORNs and, on information and belief, without compliance with the procedures specified in ED's Privacy Act regulations—has reportedly led several ED employees to "raise[] the alarm up their chain of management."[34] Indeed, "[s]everal federal officials said they were worried about DOGE's taking control of government systems that hold Americans' personal information, including student loan data."[35]

55. On February 5, 2025, members of Congress wrote a letter to ED raising "serious concerns" with reports that DOGE staff "have reportedly gained access to internal Department data systems, including financial aid systems that include personally identifiable information on millions of students," and raising an alarm about an apparent "broader plan to dismantle the federal government until it is unable to function and meet the needs of the American people."[36]

**Defendants' Unlawful Actions Harm Plaintiff's Members**

56. Plaintiff UCSA's members are among the 42 million federal student loan borrowers who have provided sensitive personal information to ED in order to obtain a federal student loan.

57. Plaintiff UCSA's members rely on Defendants' systems to apply for and obtain federal student aid, as well as to make payments on their student loans. UCSA members consented to ED using their information only for limited purposes, and they did not consent to their information being shared with Musk or any DOGE parties, or to be used as part of an effort to "shut down" ED. Defendants' actions have harmed UCSA's members by depriving them of

---

[34] *See id.*

[35] *Id.*

[36] *See* Letter from Bernard Sanders et al. to Denise Carter, Acting Secretary of Education (Feb. 5, 2025), *available at* https://democrats-edworkforce.house.gov/imo/media/doc/house_democratic_health_leaders_ask_comptroller_general_to_monitor_implementation_of_medicare_drug_price_negotiation.pdf.

the privacy protections guaranteed to them by federal law and, consequently, the ability to decide for themselves whether DOGE should be able to obtain and use their personal data for unknown reasons.

## COUNT I
**(Contrary to law)**

58. The APA directs courts to hold unlawful and set aside agency actions that are not in accordance with law. 5 U.S.C. § 706(2)(A).

59. The Privacy Act and ED's Privacy Act regulations prohibit Defendants from disclosing records on individuals to any person without the individual's consent except in specified circumstances.

60. The Internal Revenue Code, 26 U.S.C. § 6103, prohibits Defendants from disclosing returns or return information about taxpayers to any person, except for the limited purposes specified in section 6103(*l*)(13).

61. Defendants have implemented a continuous and ongoing system for disclosing the records of Plaintiff's members to DOGE members or staff without obtaining their consent.

62. Defendants have implemented a system for disclosing the records of Plaintiff's members to individuals who are not ED officers and not employees who have a need for the records in the performance of their duties.

63. Defendants have implemented a system for disclosing the records of Plaintiff's members to individuals for purposes other than the routine uses specified in ED's SORNs, including, but not limited to, information such as SSNs, home addresses, and citizenship status.

64. Defendants' actions violate the Privacy Act, ED's implementing regulations, and section 6103 of the Internal Revenue Code.

## COUNT II
### (Arbitrary and capricious)

65.     The APA directs courts to hold unlawful and set aside agency actions that are found to be arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706(2)(A).

66.     Agency action is arbitrary and capricious when an agency fails to engage in reasoned decisionmaking when it adopts or alters its policies.

67.     Defendants failed to engage in reasoned decisionmaking when they implemented a system under which Elon Musk or other individuals associated with DOGE could access ED's records for purposes other than those authorized by the Privacy Act, ED's SORNs and regulations, and the Internal Revenue Code. In particular, Defendants failed to consider their legal obligations under federal law, the harm that their actions would cause to the objectives that those statutes sought to achieve, or the harm caused to Plaintiff's members or the general public.

## COUNT III
### (Excess of statutory authority)

68.     The APA directs courts to hold unlawful and set aside agency actions in excess of statutory authority. 5 U.S.C. § 706(2)(C).

69.     Defendants have a non-discretionary duty to protect records on individuals from unauthorized disclosure.

70.     Defendants' ongoing, systematic, and continuous action in permitting Elon Musk and/or other individuals associated with DOGE to access ED's records and the personal and financial information contained therein violates that duty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Declare that Defendants acted unlawfully by giving DOGE-affiliated individuals—or other individuals not authorized by law to view ED records that contain personal information—access to those records.

B. Enjoin Defendants from continuing to permit such access or obtain such personal information.

C. Enjoin Defendants to ensure that there is no further dissemination or use of any information unlawfully obtained.

D. Enjoin Defendants to ensure that future disclosure of individual records will occur only in accordance with the Privacy Act, the Internal Revenue Code, and the SORNs applicable to the system of records at issue.

E. Enjoin Defendants to recover any records transferred from ED's systems by persons not authorized to have access, to reverse any changes made by persons not authorized to have access to those records or systems, and to ensure that any copies made by such persons are destroyed.

F. Grant any temporary, preliminary, or permanent injunctive relief necessary to protect the privacy of individuals whose information is contained within the system of records.

G. Award their costs and attorneys' fees for this action; and

H. Grant any other relief as this Court deems appropriate.

Dated: February 7, 2025                              Respectfully submitted,

                                                     */s/ Adam R. Pulver*
                                                     Adam R. Pulver (DC Bar No. 1020475)
                                                     Nandan M. Joshi (DC Bar No. 456750)

PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Daniel A. Zibel (D.C. Bar No. 491377)
Alexander S. Elson (D.C. Bar No. 1602459)
Tyler S. Ritchie (D.C. Bar No. 90018119)
NATIONAL STUDENT LEGAL DEFENSE NETWORK
1701 Rhode Island Ave. NW
Washington, DC 20036
(202) 734-7495

*Counsel for Plaintiff*