**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNIVERSITY OF CALIFORNIA STUDENT ASSOCIATION, <br><br> *Plaintiff*, <br><br> v. <br><br> DENISE CARTER, in her official capacity as Acting Secretary of Education, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00354-RDM |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
<u>**MOTION FOR EXPEDITED DISCOVERY**</u>

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT ......................................................................................................................4

    I. Discovery Should Generally Await the Resolution of a Motion to Dismiss.....................................5

    II. No Exception to the General Prohibition on Discovery in APA Cases Is Justified.....................7

        a. Discovery is generally unavailable in APA cases...............................................................7

        b. Plaintiff has not justified an exception to that rule here. ...............................................9

    III. Plaintiff Has Not Demonstrated that Expedited Discovery Is Warranted Here .....................12

        a. Plaintiff has no present need for the information it seeks. ...........................................13

        b. No motion for preliminary injunction is pending, and this Court has already denied one request for emergency relief....................................................................................15

        c. Plaintiff's requests run far in advance of the typical discovery process. ...................17

        d. Plaintiff seeks discovery for an impermissible purpose.................................................18

        e. Plaintiff's proposed discovery would impose a heavy burden on Defendants. .........20

        f. Plaintiff's requests are impermissibly overbroad.............................................................23

    IV. An Administrative Record, Not Discovery, Should Be the First Resort.....................................24

CONCLUSION..................................................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Ad Hoc Metals Coal. v. Whitman*,
  227 F. Supp. 2d 134 (D.D.C. 2002) .................................................................7

*Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*,
  663 F.3d 476 (D.C. Cir. 2011) ...........................................................................8

*Amfac Resorts, LLC v. U.S. Dep't of Interior*,
  143 F. Supp. 2d 7 (D.D.C. 2001) ....................................................................10

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
  271 F.3d 262 (D.C. Cir. 2001) .........................................................................23

*Arab v. Blinken*,
  600 F. Supp. 3d 59 (D.D.C. 2022) ...................................................................24

*Assi v. Hanshaw*,
  625 F. Supp. 3d 722 (S.D. Ohio 2022) ............................................................19

*Attkisson v. Holder*,
  113 F. Supp. 3d 156 (D.D.C. 2015) ...........................................................13, 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................17

*Capital Eng'g & Mfg. Co. v. Weinberger*,
  695 F. Supp. 36 (D.D.C. 1988) ........................................................................21

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006)......................................................................4, 12

*Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*,
  201 F.R.D. 1 (D.D.C. 2001) ..............................................................................7

*Chef Time 1520 LLC v. SBA*,
  646 F. Supp. 3d 101 (D.D.C. 2022) .................................................................24

*Colo. Wild Horse & Burro Coal., Inc. v. Kempthorne*,
  527 F. Supp. 2d 3 (D.D.C. 2007)..................................................................6, 23

*Comm. of 100 on the Fed. City v. Foxx*,
  140 F. Supp. 3d 54 (D.D.C. 2015).....................................................................8

*CTS Corp. v. EPA*,
  759 F.3d 52 (D.C. Cir. 2014)..............................................................................8

*Dep't of Comm. v. New York,*
   588 U.S. 752 (2019) ........................................................................................................10

*Dimension Data N. Am., Inc. v. NetStar-1, Inc.,*
   226 F.R.D. 528 (E.D.N.C. 2005) ....................................................................................19

*Ent. Tech. Corp. v. Walt Disney Imagineering,*
   No. CIV.A. 03-3546, 2003 WL 22519440 (E.D. Pa. Oct. 2, 2003) ....................................16

*Farrell v. Tillerson,*
   315 F. Supp. 3d 47 (D.D.C. 2018)....................................................................................11

*Fla. Power & Light Co. v. Lorion,*
   470 U.S. 729 (1985) ..........................................................................................................7

*Florida v. United States,*
   No. 3:21-cv-1066, 2022 WL 2431442 (N.D. Fla. June 6, 2022)........................................10

*Guttenberg v. Emery,*
   26 F. Supp. 3d 88 (D.D.C. 2014) ................................................................................*passim*

*Hemp Indus. Ass'n v. U.S. DEA,*
   Civil Action No. 20-2921(JEB), 2020 WL 12918344 (D.D.C. Dec. 15, 2020)............ 17, 18

*Hispanic Affs. Proj. v. Acosta,*
   901 F.3d 378 (D.C. Cir. 2018)..........................................................................................11

*In re Fannie Mae Derivative Litig.,*
   227 F.R.D. 142 (D.D.C. 2005) ..........................................................................................12

*In re Quinteros,*
   No. 19-br-195, 2021 WL 3674727 (D.D.C. Aug. 13, 2021) ..............................................18

*In re United States,*
   583 U.S. 29 (2017) ..........................................................................................5, 6, 9, 17

*Landwehr v. FDIC,*
   282 F.R.D. 1 (D.D.C. 2010) ...................................................................................... 13, 22

*Marshall Cnty. Health Care Auth. v. Shalala,*
   988 F.2d 1221 (D.C. Cir. 1993)........................................................................................10

*Memory Integrity, LLC v. Intel Corp.,*
   308 F.R.D. 656 (D. Or. 2015) ..........................................................................................21

*Moreno v. United States,*
   No. 24 Civ. 245, 2024 WL 3763755 (W.D. Tex. Aug. 12, 2024) ........................................6

*Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*,
　842 F. Supp. 2d 127 (D.D.C. 2012) ...................................................................10

*Neitzke v. Williams*,
　490 U.S. 319 (1989) ............................................................................................5

*OFAC v. Voices in Wilderness*,
　382 F. Supp. 2d 54 (D.D.C. 2005).......................................................................8

*Onan Corp. v. United States*,
　476 F. Supp. 428 (D. Minn. 1979).....................................................................16

*Open Soc. Inst. v. U.S. Citizenship & Immig. Servs.*,
　573 F. Supp. 3d 294 (D.D.C. 2021) .................................................................7, 8

*Owner-Operator Indep. Drivers Assn., Inc. v. U.S. Dep't of Transp.*,
　879 F.3d 339 (D.C. Cir. 2018)..............................................................................7

*Pinson v. U.S. Dep't of Just.*,
　Civil Action No. 18-486 (RC), 2021 WL 3418954 (D.D.C. Aug. 5, 2021).........12

*Ragbir v. Homan*,
　No. 18-cv-1159, 2018 WL 11365231 (S.D.N.Y. Mar. 26, 2018).........................5

*Sara Lee Corp. v. Am. Bakers Ass'n*,
　252 F.R.D. 31 (D.D.C. 2008) ...............................................................................7

*Starbucks Corp. v. McKinney*,
　602 U.S. 339 (2024) ..........................................................................................18

*Steel Co. v. Citizens for a Better Env't*,
　523 U.S. 83 (1998) ..............................................................................................5

*St. Louis Grp., Inc. v. Metals & Additives Corp., Inc.*,
　275 F.R.D. 236 (S.D. Tex. 2011) .......................................................................19

*TransUnion LLC v. Ramirez*,
　594 U.S. 413 (2021) ............................................................................................7

*True the Vote, Inc. v. IRS*,
　Civil Action No. 13-734 (RBW), 2014 WL 4347197 (D.D.C. Aug. 7, 2014)..........6, 17, 23

*Utts v. Bristol-Myers Squibb Co.*,
　251 F. Supp. 3d 644 (S.D.N.Y. 2017) ..................................................................5

*Venetian Casino Resort, LLC v. EEOC*,
　409 F.3d 359 (D.C. Cir. 2005)...........................................................................11

**Statutes**

5 U.S.C. § 552a ..........................................................................................................14

5 U.S.C. § 706 ...............................................................................................8, 10, 22

26 U.S.C. § 7431 ........................................................................................................14

**Rules**

Fed. R. Civ. P. 26 ........................................................................................................5

Fed. R. Civ. P. 33 ......................................................................................................22

Loc. Civ. R. 16.3..........................................................................................................5

Loc. Civ. R. 26.2..........................................................................................................5

**Other Authorities**

8A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2103 (3d ed.) ....................................20

## INTRODUCTION

Soon after filing this suit under the Administrative Procedure Act ("APA"), Plaintiff University of California Student Association sought a temporary restraining order. The Court denied that request because Plaintiff had "failed to clear th[e] essential hurdle" of making a "clear showing" that "'it [would] likely suffer irreparable harm' in the absence of emergency injunctive relief." Now, two weeks later, Plaintiff has moved to take at least three depositions and significant written discovery in a nominal attempt to uncover the irreparable harm it previously failed to show.

This fishing expedition should be rejected. Courts in this District strongly disfavor pre-answer discovery; accordingly, this Court should deny Plaintiff's request to take discovery before the Court has an opportunity to evaluate whether it even has jurisdiction, let alone whether Plaintiff has adequately pleaded legally valid claims. And discovery is highly disfavored in APA cases under *any* circumstances—much less expedited circumstances. Plaintiff barely cites the relevant case law, much less makes a compelling argument that this case fits within the narrow exceptions to the general rule against discovery in APA cases. As justification for the extraordinary relief it seeks, Plaintiff proffers only that it *may* renew its request for injunctive relief, and that it needs to build out a case of irreparable harm to do so—the same case this Court previously rejected.

Even if Plaintiff had established the propriety of some discovery in this APA case, it still has not made out a case for expedited discovery. Most fundamentally, it has shown no need for the discovery it proposes. Although Plaintiff claims that its requested information is necessary to determine "irreparable harm," its requested discovery would have no impact on the Court's prior holding that Plaintiff could not establish irreparable injury because its members may seek damages under the Privacy Act and Internal Revenue Code. Furthermore, the topics on which Plaintiff has requested discovery could not alter the factual basis on which the Court's prior holding rests, *i.e.*, that only government employees with an obligation to keep private information private had access to that

1

information here.  Additionally, the Department of Education filed on Friday an administrative record in a separate suit in the District of Maryland that addresses the same topics on which Plaintiff seeks discovery, further undercutting its claims of need.

No other factor of the governing "reasonableness" test for expedited discovery favors Plaintiff, either.  Plaintiff has not filed any motion for preliminary injunction, depriving the Court of an opportunity to assess the appropriate contours of discovery, denying Defendants the chance to respond in a meaningful fashion, and belying any notion of the haste that ordinarily accompanies motions for injunctive relief.  This last point is critical:  having waited weeks to file this motion (unaccompanied by a motion for preliminary injunction) without citing any changed circumstances (apart from an order granting discovery from another court in this District, which was, respectfully, erroneously decided), Plaintiff has forfeited any plausible claim to emergency relief.  Instead, through a motion filed well before the norm, Plaintiff has requested wide-ranging, burdensome discovery improperly going to the merits of the case, whose very breadth reveals it to be an attempt to develop the foundations of a case.  Plaintiff's request is unreasonable, and the Court should reject it.

If the Court disagrees and grants any relief, that relief should not extend to discovery. Following the lead of a court in the District of Maryland, the Court should first consider ordering an administrative record tailored to any "final agency action" it is satisfied Plaintiff has alleged.

## BACKGROUND

Plaintiff filed suit on February 7, 2025.  *See generally* Compl., ECF No. 1.  The three-count complaint alleges that "Defendants have implemented a continuous and ongoing system for disclosing the records of Plaintiff's members to DOGE members"—*i.e.*, federal employees assigned to the Department of Education in order to implement the President's DOGE Agenda— "or staff without obtaining their consent."  *Id.* ¶ 61.  Plaintiff further alleges that the "implement[ation]" of this "system," *id.*, violated the Privacy Act and Internal Revenue Code, *id.* ¶ 64, was arbitrary and

capricious, *id.* ¶ 67, and violated Defendants' "non-discretionary duty to protect records on individuals from unauthorized disclosure," *id.* ¶ 69. All three counts are alleged under the APA. *Id.* ¶¶ 58, 65, 68.

Three days after filing the complaint, Plaintiff filed a motion for temporary restraining order. ECF No. 9. The motion alleged "immediate, irreparable injury" "from Defendants' ongoing exposure of their sensitive personal and financial data to third-party access." *Id.* at 29. In particular, Plaintiff said, Department of Education employees' access to personal information had "injured [its] members' privacy interests, caused emotional harm, had a chilling effect, created a risk of further unlawful disclosure, and placed them at risk of identity theft." *Id.* at 30.

Defendants opposed Plaintiff's motion. ECF No. 16. In addition to arguing that Plaintiff had not shown a likelihood of success on the merits, nor that the balance of the equities favored Plaintiff, Defendants raised several threshold arguments against the issuance of emergency relief that apply with equal or greater force to Plaintiff's suit writ large: that Plaintiff lacked standing, *id.* at 6-12, and that relief under the APA was unavailable, *id.* at 14-22.

On February 17, 2025, the Court denied Plaintiff's motion for a temporary restraining order for failure to establish likely irreparable harm and declined to address the parties' other arguments. ECF No. 20. In particular, the Court reasoned that where irreparable harm from a disclosure of personal information is alleged, "the context . . . matters." *Id.* at 10. Irreparable harm may exist where "highly sensitive information will be made public, or ends up in the hands of someone with no obligation to keep it confidential," *id.* (emphasis omitted), but not "where the challenged disclosure is not 'public,' but involves individuals obligated to keep it confidential," *id.* The Court then relied on Defendants' declarations to find that the six employees at issue in this litigation are bound by generally applicable law on nondisclosure and data access, and rejected Plaintiff's arguments (1) that a lack of formal authorization to view particular data would establish irreparable injury and (2) there was a non-conjectural risk of identity theft, further dissemination, or unauthorized disclosure of personal data

(including for immigration enforcement). *Id.* at 11-12. For these reasons, the Court held, "[t]he future injuries that [Plaintiff's] members fear are, therefore, far from likely, let alone 'certain' and 'great.'" *Id.* at 12-13 (citing *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). The Court also reasoned that any harm faced by Plaintiff's members could not be irreparable because of the potential availability of remedies under the Privacy Act and Internal Revenue Code. *Id.* at 13.

Exactly two weeks later, Plaintiff filed the instant motion for expedited discovery. ECF No. 24. The motion seeks leave to propound on the Department of Education fourteen interrogatories (including subparts), ten requests for production of documents, and three depositions (one deposition each of two Department employees who submitted declarations in support of Defendants' opposition to Plaintiff's motion for a temporary restraining order, and one 30(b)(6) deposition). Proposed Disc. Requests, ECF No. 24-2.

## ARGUMENT

Consistent with longstanding principles of civil litigation (including APA litigation in particular), the Court need not and should not entertain Plaintiff's request for discovery before it adjudicates the threshold arguments to be made in Defendants' forthcoming motion to dismiss (which were previewed in Defendants' response to Plaintiff's motion for a temporary restraining order). Alternatively, the Court should reject Plaintiff's inappropriate attempt both to avail itself of the APA's cause of action and to avoid the APA's strictures on review, which exclude discovery absent special and limited circumstances Plaintiff has made no attempt to satisfy. Even if discovery were conceivably appropriate, Plaintiff has not established that expedited discovery is. Ultimately, if the Court disagrees and determines that some factual development is appropriate at this procedural stage, it should first order Defendants to produce an administrative record.

## I.    Discovery Should Generally Await the Resolution of a Motion to Dismiss

Courts in this District strongly disfavor pre-answer discovery, particularly where a motion to dismiss may eliminate the need for it.[1] *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014). Even in non-APA cases, "[t]he motion to dismiss mechanism exists to prevent plaintiffs from conducting fishing expeditions to see if they can cobble together meritorious claims." *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 673 (S.D.N.Y. 2017), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019). That maxim applies with particular force in APA cases, where discovery is generally unavailable. *See* Pt. II.a, *infra*. Here, the timing and scope of Plaintiff's request make plain that it is attempting to construct a case out of whole cloth through early discovery. The Court should reject that effort. *See Raghir v. Homan*, No. 18-cv-1159, 2018 WL 11365231, at *2 (S.D.N.Y. Mar. 26, 2018) (denying application for expedited discovery, including document demands and a Rule 30(b)(6) deposition, prior to determination of the government's motion to dismiss).

That discovery should be contemplated only after a motion to dismiss is resolved is confirmed by considerations of judicial and party economy.[2] Where strong threshold arguments against a case exist, courts generally adjudicate those arguments before permitting the "burdensome and expensive" process of discovery to begin. *Utts*, 251 F. Supp. 3d at 673; *see also In re United States*, 583 U.S. 29, 32 (2017) (per curiam) (directing district court to first rule on government's threshold arguments before ordering supplementation of the administrative record); *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) ("Th[e 12(b)(6)] procedure, operating on the assumption that the factual allegations in the

---

[1] This District's practice is consistent with the requirement that a federal court assure itself of its subject-matter jurisdiction before proceeding to the merits of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998).

[2] The Federal Rules of Civil Procedure and Local Rules of this Court reinforce the impropriety of pre-answer discovery. *See* Fed. R. Civ. P. 26(d)(1) (requiring a discovery conference before discovery may commence); Loc. Civ. R. 26.2(a) (similar), 16.3(b) (exempting pre-answer cases from discovery conference obligations); *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 101 (D.D.C. 2018)

complaint are true, streamlines litigation by dispensing with needless discovery and factfinding."); *True the Vote, Inc. v. IRS*, Civil Action No. 13-734 (RBW), 2014 WL 4347197, at *8 (D.D.C. Aug. 7, 2014) (finding expedited discovery prior to resolution of motion to dismiss "premature.").

Defendants have already made strong threshold arguments (including that Plaintiff lacks standing and that its claims are not reviewable under the APA) in this case, Defs.' Opp'n to TRO Mot. at 6-12, 14-22, and they will further advance those arguments in their forthcoming motion to dismiss (which is due no later than April 8). "[T]hose arguments, if accepted, likely would eliminate the need for the District Court to examine a complete administrative record." *See In re United States*, 583 U.S. at 31-32. Granting any discovery would thus be inappropriate now, before that motion is resolved. *See Colo. Wild Horse & Burro Coal., Inc. v. Kempthorne*, 527 F. Supp. 2d 3, 8 (D.D.C. 2007) ("If the Strategy is not subject to APA review, no discovery concerning its antecedents or current effect would add to this APA case and none will be allowed."); *cf. Moreno v. United States*, No. 24 Civ. 245, 2024 WL 3763755, at *2 (W.D. Tex. Aug. 12, 2024) ("If discovery were to continue in this case while Defendants' motion to dismiss is pending, Defendants would be subject to undue burden and expense undertaking discovery on claims that this Court may dismiss on immunity grounds.").

Importantly, the threshold arguments Defendants have raised already, and will raise again in their motion to dismiss, do not depend on factual development to adjudicate. In response to Plaintiff's motion for a temporary restraining order, Defendants raised Article III standing and APA reviewability issues that, if resolved in Defendants' favor, would require dismissal of the claims upon which Plaintiff seeks expedited relief. Both of these categories of arguments raise questions of law that can be resolved without fact discovery. Defendants' principal standing argument is that whatever intangible injuries may arise from the disclosure of government information to officials who work for the President and are performing work at agencies subject to the guidance and direction of their leadership (as opposed to a data leak to those outside the government), those injuries lack a "historical

or common-law analog." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021) (quoting *Owner-Operator Indep. Drivers Assn., Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 344 (D.C. Cir. 2018)). Although distinct from the question of irreparable harm, the standing injury is related—and the Court has already resolved the legal question of irreparable harm without fact discovery. *See generally* Order Denying TRO. Defendants' threshold APA arguments—that Plaintiff has not identified a final agency action and that Plaintiff has adequate alternative remedies under the Privacy Act and Internal Revenue Code—likewise present legal questions that do not require factual development to resolve.

Even if the Court ultimately decides that some of Plaintiff's claims survive a motion to dismiss, it is possible that resolution of the threshold issues raised by Defendants will narrow any issues that might need to be addressed on the merits, and thus the scope of the resulting administrative record. Accordingly, any motion for expedited discovery is premature and should be denied prior to resolution of Defendants' forthcoming motion to dismiss. *See Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (citing the "eminently logical" principle that "discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending") (citation omitted).

## II.   No Exception to the General Prohibition on Discovery in APA Cases Is Justified

### a.   Discovery is generally unavailable in APA cases.

"[T]he default rule is that[,] 'in cases brought under the APA, the Court's review is confined to the administrative record.'" *Open Soc. Inst. v. U.S. Citizenship & Immig. Servs.*, 573 F. Supp. 3d 294, 306 (D.D.C. 2021) (Moss, J.) (quoting *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 136 (D.D.C. 2002)); *see Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). That record is entitled to a "strong presumption of regularity." *Open Soc. Inst.*, 573 F. Supp. 3d at 306-07 (quoting *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008)). As the Court has noted, the default rule flows directly from the APA's text, which permits review "based on 'the whole record or those parts of it

cited by a party.'" *Id.* (quoting 5 U.S.C. § 706). Accordingly, courts will consider extra-record evidence only in "quite narrow and rarely invoked" circumstances. *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014).

Because extra-record evidence is generally irrelevant to APA review, discovery is generally not permitted in APA cases. *Comm. of 100 on the Fed. City v. Foxx*, 140 F. Supp. 3d 54, 59 (D.D.C. 2015) (quoting *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011)). Indeed, a plaintiff seeking discovery in an APA action must "make[] a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record." *Id.* (quoting *Air Transp. Ass'n*, 663 F.3d at 487-88); *see Open Soc. Inst.*, 573 F. Supp. 3d at 307 & n.2 (describing alternative formulations of the test for consideration of extra-record evidence in APA cases); *see also OFAC v. Voices in Wilderness*, 382 F. Supp. 2d 54, 63 (D.D.C. 2005) (denying motion for discovery in an APA case).

Crucially, assessing the propriety of discovery in an APA case assumes (1) that the Court has resolved the threshold question of whether the action is reviewable under the APA at all; (2) that the government has had an opportunity to lodge what it considers the administrative record to be with the Court and the plaintiffs; and (3) that the parties have had an opportunity to brief the issue of whether the record should be supplemented, by discovery or otherwise. *See, e.g., Gomez v. Trump*, Civil Action No. 20-0419 (APM), 2020 WL 12919371, at *1 (D.D.C. Aug. 13, 2020) (denying plaintiffs' request for expedited discovery in APA case and ordering government to promptly produce the certified administrative record). This is, necessarily, a demanding process. Were it otherwise, "every challenge to administrative action would turn into a fishing expedition into the motives of the defendant agency." *Voices in Wilderness*, 382 F. Supp. 2d at 63.

### b. Plaintiff has not justified an exception to that rule here.

Plaintiff has not established that an exception to the general prohibition on discovery in APA cases applies.  In fact, puzzlingly, Plaintiff barely engages with the rarity of discovery in APA cases.  *See* Mot. at 9-10 (describing discovery standards generally applicable to civil litigation and noting in passing that "review is typically based on the administrative record").  Instead, it relies heavily on Judge Bates' recent order authorizing expedited discovery in *American Federation of Labor and Congress of Industrial Organizations v. Department of Labor*, Civil Action No. 25-339 (JDB) (D.D.C.) ("*AFL-CIO* Order").  *See* Mot. at 10-11, 12-18.

Defendants disagree with the *AFL-CIO* Order.[3]  First, the *AFL-CIO* Order did not address whether it was proper to proceed with expedited discovery prior to ruling on the defendants' threshold arguments in their motion to dismiss.  *See generally* Order Granting in Part and Denying in Part Motion for Expedited Discovery, *AFL-CIO v. Dep't of Lab.*, Civil Action No. 25-339 (JDB) (D.D.C. Feb. 27, 2025); *but see In re United States*, 583 U.S. at 32.  Second, the court appears to have fashioned a novel exception to the administrative record review rule—one resting on the court's assertion that the case before it is "not an ordinary APA case."  *Id.* at 5; *see also id.* at 7 ("[T]his case merits an exception to the general prohibition of discovery in APA cases.").  Third, the *AFL-CIO* Order failed to provide an opportunity for the agency to first compile and produce the administrative record and then determine if any "gaps" in that record existed.  *See id.* at 6.  Instead, the court surmised that it was not "evident that there exists a standard administrative record that defendants could submit," *id.* at 6, and further concluded—without the benefit of the administrative record—that there was a need for "filling in gaps . . . to determine what the agency actually did," *id.* (internal quotation marks and citation omitted).  That course of action contravenes the ordinary practice of determining first whether the administrative

---

[3] It should nevertheless be noted that Judge Bates observed that "[w]hether to grant the motion [for expedited discovery]" was "a close question," *AFL-CIO* Order at 1, and the court's ruling limited the plaintiffs' discovery requests, *id.* at 12, 14.

record is incomplete before ordering discovery. *See Amfac Resorts, LLC v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 10 (D.D.C. 2001) ("Thus, any discovery request [in an APA case] is necessarily predicated on the notion that the record is insufficient." (footnote omitted)); *cf. Dep't of Comm. v. New York*, 588 U.S. 752, 782 (2019) (court "should not have ordered extra-record discovery," including depositions, "when it did"; "the most that was warranted was the order to complete the administrative record"). Even the authorities Plaintiff cites establish as much. *See Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C. Cir. 1993) (cited in Mot. at 10) ("Even on those rare occasions when [discovery in an APA case] is appropriate, the district court is not engaged in ordinary fact-finding, but instead is filling in gaps in the record to determine what the agency actually did."). Accordingly, this Court should decline to replicate the *AFL-CIO* Order's limited grant of pre-answer discovery in an APA case.

Nor do the other cases Plaintiff cites establish that an exception to the default APA rule is appropriate here. *See* Mot. at 10-11. Beyond just buttressing Defendants' argument that discovery can only follow the production of an administrative record, *see supra*, *Marshall County Health Care Authority* did not grant discovery but instead affirmed dismissal of an APA case. And it is true that *Florida v. United States* included an "order on motion to supplement administrative record," as Plaintiff notes, Mot. at 10, but the cited order in fact *denied* that motion. No. 3:21-cv-1066, 2022 WL 2431442, at *2 (N.D. Fla. June 6, 2022). Notably, that denial explicitly mentioned the existence of non-APA claims, which are not alleged in the complaint here, *see* Compl. ¶¶ 58, 65, 68, and alluded to the availability of discovery on those non-APA claims. 2022 WL 2431442, at *2. *National Law Center on Homelessness and Poverty v. United States Department of Veterans Affairs* is even further off-base. Unlike the final agency action Plaintiff alleges exists here, *see* Reply ISO TRO Mot. at 10-13, ECF No. 17, that case addressed a challenge to an agency's *failure* to act, and a corresponding suit brought under 5 U.S.C. § 706(1). 842 F. Supp. 2d 127, 130-31 (D.D.C. 2012). Even if the court correctly observed in dicta

that the plaintiffs "would likely be entitled to some discovery," *id.* at 131, that musing is irrelevant here, where Defendants would be permitted to produce an administrative record in the event their motion to dismiss were denied.[4]

Courts have, on rare occasions, recognized that a district court may permit discovery to "ascertain the contours of the precise policy at issue" in an APA case. *Hispanic Affs. Proj. v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (citation omitted); *see* Mot. at 9-10.  In those decisions, however, the question was whether there was an agency action or policy at all, or what exactly that policy or action was.  For example, in *Hispanic Affairs Project*, the court sought to determine whether the Department of Homeland Security's pattern and practice amounted to an agency policy of automatically extending H-2A visas beyond the regulatory definition of temporary employment.  Factual determination was necessary to discovery the bounds of the alleged pattern and practice.  *Id.* at 388.  In *Venetian Casino Resort*, *see* Mot. at 10, the question surrounded what the exact contours of the EEOC's policies were, based on various litigating positions. 409 F.3d at 360.

Here, in contrast, it is clear what Plaintiff alleges is the final agency action: the granting of access to informational systems to a limited group of Department of Education employees.  *See* Compl. ¶¶ 11, 53.  Discovery thus will not bear on Plaintiff's assertions of irreparable harm (the contours of which are known in all relevant respects, and which the Court has already rejected), nor on Defendants' Privacy Act and Internal Revenue Code preclusion arguments, which are purely legal.  Discovery is also not applicable to Defendants' final agency action arguments because Plaintiff has sought to challenge Defendants' actions at a level of generality where there are no contours to

---

[4] In the parties' Joint Statement Regarding an Administrative Record, ECF No. 15, Defendants stated their position that "[b]ecause this suit involves no final agency action, there is no administrative record underlying the disputed issues."  *Id.* at 3.  If the Court disagrees, the production of an administrative record for the purported agency action the Court identifies, not discovery, is the appropriate next step.  *E.g.*, *Farrell v. Tillerson*, 315 F. Supp. 3d 47, 72 (D.D.C. 2018) (denying defendants' motion to dismiss for, *inter alia*, absence of final agency action and ordering defendants to comply with Local Civil Rule 7(n)).

ascertain.  Defendants wish to give certain employees access to systems at their agencies, in accordance with procedures they prescribe.  Plaintiff believes that access is illegal, and seeks to stop those employees from having any access to systems that contain protected data.  There is, at bottom, little to no light discovery would shed on these issues.

Finally, although it does not employ the label of "bad faith," Plaintiff intimates throughout its motion that Defendants have improperly responded to its motion in the litigation thus far—*e.g.*, describing Defendants' declarations as "skeletal" and "artfully worded," Mot. at 1, implying that Defendants have "ke[pt] their actions secret to avoid meaningful judicial review," *id.* at 2, and criticizing the declarations as containing "inconsistent[]" and "inadequate[]" explanation, *id.* at 14.  To the extent these suggestions are meant to connote bad faith, the Court should reject this half-made argument out of hand.  A showing of irreparable harm is Plaintiff's burden to carry, not Defendants' burden to refute.  *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.  Defendants were thus not required to produce any declarations at all.  That they did so should not subject them to the burdens of irregular discovery, particularly where Plaintiff has not identified inaccuracies in them.

## III.    Plaintiff Has Not Demonstrated that Expedited Discovery Is Warranted Here

Even to the extent that this Court determines that expedited discovery is not categorically precluded, Plaintiff cannot meet the governing "reasonableness" standard.  *See Guttenberg*, 26 F. Supp. 3d at 97-98; *see also, e.g.*, *Pinson v. U.S. Dep't of Just.*, Civil Action No. 18-486 (RC), 2021 WL 3418954, at *4 (D.D.C. Aug. 5, 2021) (applying reasonableness test outlined in *Guttenberg*).  Under this approach, courts in this District primarily examine a list of five non-exhaustive factors:  "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made."  *Guttenberg*, 26 F. Supp. 3d at 98 (quoting *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005)).  Thus, expedited

discovery, as Plaintiff requests, is "not the norm[,]"and reserved for unique circumstances. *See id.* at 97. For example, courts may permit limited, expedited discovery when it is needed to determine the identities of Doe defendants. *See Attkisson v. Holder*, 113 F. Supp. 3d 156, 161 (D.D.C. 2015); *Landwehr v. FDIC*, 282 F.R.D. 1, 3 (D.D.C. 2010).

These factors weigh heavily against the expedited discovery Plaintiff requests. Plaintiff has no need for the discovery it proposes, as answers to its questions would not affect its ability to show irreparable harm, its stated intent (factors 1 and 3). Implicitly conceding as much, Plaintiff has not yet filed a motion for preliminary injunction (factor 1), following the Court's denial of its first request for injunctive relief. Instead, Plaintiff has proposed wide-ranging and burdensome discovery (factors 2 and 4) on the merits of its case—an impermissible purpose (factor 3)—far in advance of the ordinary course of civil litigation (factor 5), and outside the norm entirely for APA cases. Accordingly, the Court should deny Plaintiff's motion.

### a. Plaintiff has no present need for the information it seeks.

The first and third factors of the *Guttenberg* test inquire into the pendency of a preliminary-injunction motion and Plaintiff's purpose for its request. 26 F. Supp. 3d at 98. Those two factors overlap in this case, and point toward denying relief: Plaintiff has not filed a preliminary injunction motion, but has indicated that it seeks discovery to strengthen its claims of irreparable harm in a future such motion. Mot. at 12 ("[G]iven that the preliminary-injunction standard also requires a showing of irreparable harm, the Court's decision [denying a temporary restraining order] makes it futile to seek a preliminary injunction absent an opportunity for further factual development."). Presumably such a motion would, like Plaintiff's motion for a temporary restraining order, seek an "order enjoining Defendants from disclosing information about individuals to individuals affiliated with DOGE." TRO Mot. at 33; *see also* Proposed TRO at 1, ECF No. 9-4 (using similar language).

Even assuming that Plaintiff's attempts to make out a case of irreparable harm were a legitimate purpose, *but see* Pt. III.d., *infra*, none of the facts Plaintiff seeks to uncover through discovery would have any effect on the Court's prior conclusion that Plaintiff had not shown irreparable injury. Most centrally, the Court reasoned that Plaintiff could not establish irreparable harm because of the potential availability of monetary remedies under the Privacy Act and Internal Revenue Code. Order Denying TRO at 13 (citing 5 U.S.C. § 552a(g)(4) & 26 U.S.C. § 7431(a)). That will remain true with discovery or without it. Even absent this legal obstacle, the facts Plaintiff seeks would not change the import of the evidence the Court previously relied on (and the veracity of which Plaintiff does not directly challenge, despite a stated desire to "explore" Defendants' declarations, Mot. at 13 (quotation omitted)). The Court correctly reasoned that in assessing alleged irreparable harm stemming from disclosure of personal information, "the context of the dissemination matters." *Id.* at 10. In particular, courts have found irreparable harm where "highly sensitive information will be made *public*, or ends up in the hands of someone with no obligation to keep it confidential." *Id.* (emphasis in original). In contrast, irreparable harm cannot be established where "individuals obligated to keep it confidential" have access to it, *id.* at 10-11, or where "government employees who are not formally authorized to view it, without more," do in fact view it, *id.* at 11. Applying those principles, the Court relied on Defendants' evidence to hold that the six relevant Department of Education employees with potential access to covered data would not make that information public, and were obligated to keep it confidential. *Id.* at 10-12.

The information Plaintiff seeks would not alter these conclusions. Even if there exist "asymmetries of information" between the parties, *see* Mot. at 13, Defendants have already proffered sufficient information to nullify Plaintiff's claims of irreparable harm: they have established that the relevant individuals are government employees under an obligation not to violate the confidentiality of the information to which they have access. *See* Order Denying TRO at 10-13 (citing declarations).

Attempting to dodge this fact, Plaintiff seeks to probe "whether the individuals to whom Defendants have granted access are employees of the [Department of Education]." Mot. at 14. But that is, at most, a merits question—not a question relating to irreparable harm, for which the Court has already identified the relevant criteria. *See* Order Denying TRO at 10-12. The same is true of an employee's "need to know" certain information, *see* Mot. at 14, which has nothing to do with whether the relevant individuals are "obligated to keep [that information] confidential," Order Denying TRO at 10. In fact, to the contrary, the Court expressly rejected Plaintiff's theory that a federal employee's lack of "formal[] authoriz[ation]" to view particular information might give rise to irreparable harm. *Id.* at 11. Thus, even under its own description of its proposed requests, Plaintiff has no need for the information it seeks.

Plaintiff's claim to needing discovery is further undercut by the public filing of an administrative record in *American Federation of Teachers v. Bessent*, No. 8:25-cv-430 (D. Md.), the subject of which overlaps heavily (if not entirely) with the irreparable harm Plaintiff hopes to establish here. In that case, Judge Boardman ordered the production of an administrative record underlying the Department of Education's "decisions to grant DOGE affiliates access to agency record systems." Op. on TRO at 17, *Am. Fed'n of Teachers v. Bessent*, No. 8:25-cv-430 (D. Md. Feb. 24, 2025). The Department has done so, and that administrative record is publicly available on the docket. Notice, *Am. Fed'n of Teachers v. Bessent*, 8:25-cv-430 (D. Md. Mar. 7, 2025). Plaintiff's request here would thus be duplicative and unnecessary.

### b. No motion for preliminary injunction is pending, and this Court has already denied one request for emergency relief.

Relatedly but independently, Plaintiff has (as it admits at 12) not filed a motion for preliminary injunction, and thus the first *Guttenberg* factor cuts against it. *See Guttenberg*, 26 F. Supp. 3d at 98. This is significant, as requests for expedited discovery typically arise out of the need to support such a motion. *See, e.g., id.* at 97 ("Plaintiffs also move for expedited discovery so they can make a record to

support their pending motion for a preliminary injunction"); *see also Ent. Tech. Corp. v. Walt Disney Imagineering*, No. CIV.A. 03-3546, 2003 WL 22519440, at *3 (E.D. Pa. Oct. 2, 2003); *Onan Corp. v. United States*, 476 F. Supp. 428, 434 (D. Minn. 1979).

Plaintiff implies that it is similarly situated to a party moving for a preliminary injunction, arguing it requires additional factual support to establish irreparable injury. *See* Mot. at 12. But the difference between a party that has a motion pending, and one that does not, is in fact significant for two reasons. First, a "demonstrated lack of urgency in seeking expedited discovery" weighs against permitting it. *See Guttenberg*, 26 F. Supp. 3d at 98. Plaintiff did not seek this discovery before its prior motions for temporary restraining order, so it is wrong, at this stage, to say that it has sought this discovery with any sort of urgency. That is particularly true where weeks have passed since the Court denied the prior motion. Second, this order of operations deprives Defendants of a full opportunity to effectively oppose the relief sought here. Without a pending motion, Defendants cannot effectively critique whether the information sought is for a purpose germane to Plaintiff's contemplated request for emergency relief or how the scope aligns with the type of relief Plaintiff seeks. Plaintiff unsuccessfully tries to dodge this conclusion by insisting that "litigation on the TRO motion has already 'revealed the factual and legal issues critical to the impending preliminary-injunction motion.'" Mot. at 12 (quoting *AFL-CIO* Order at 7). To be sure, Plaintiff has, through its papers thus far, given a high-level impression of the agency policies it would like to stop. But various aspects of Plaintiff's case have evolved even in the course of briefing its motion for a temporary restraining order. *See* Reply ISO TRO at 3 (debuting novel standing theories analogizing to intrusion upon seclusion and infringement of a property owner's right to exclude). To permit wide-ranging discovery before a second motion is even filed would improperly enable Plaintiff to continue building its case as it goes, shifting its litigating burden onto Defendants.

Another court in this District rejected the concept of plaintiffs using expedited discovery as a way of building their case in *Hemp Industries Association v. United States Drug Enforcement Administration*, where businesses involved in the production and sale of hemp products filed for declaratory relief to determine whether two necessary byproducts constituted controlled substances under the Controlled Substances Act.  Civil Action No. 20-2921(JEB), 2020 WL 12918344 (D.D.C. Dec. 15, 2020).  Those plaintiffs sought expedited discovery as to "whether there [was] a case or controversy."  *Id.* at *2.  The Court rejected the approach, noting that the action subverted the APA as "any party, simply by filing a lawsuit and quickly propounding interrogatories, could force the agency to develop a policy position and support it with legal arguments."  *Id.*  So too here. Plaintiff has sought extensive and intrusive discovery before the Court has even determined it can even properly entertain the case, and without a pending request for injunctive relief. The Court should conclude this factor weighs heavily against expedited discovery.

### c.  Plaintiff's requests run far in advance of the typical discovery process.

*Guttenberg* explained that the "most important" consideration in the Court's reasonableness analysis was "the pendency of defendants' motion to dismiss."  26 F. Supp. 3d at 99; *see also True the Vote, Inc.*, 2014 WL 4347197, at *8 (finding expedited discovery prior to resolution of motion to dismiss "premature.").  Expediting discovery in the face of a dispositive motion drains resources, burdens Defendants, and creates inefficiencies as it requires "expend[ing] significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action." *Guttenberg*, 26 F. Supp. 3d at 99; *see also id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.") (cleaned up)); *In re United States*, 583 U.S. at 32 (vacating and remanding to the district court with instructions to rule on the government's threshold arguments regarding

jurisdiction and reviewability under the APA which "likely would eliminate the need for the District Court to examine a complete administrative record.").

Indeed, "[a]s courts in this district have repeatedly emphasized," and as is discussed *supra* at Part I.a., "'discovery typically occurs after the resolution of motions to dismiss,' because 'requiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim . . .'" is inefficient. *In re Quinteros*, No. 19-br-195, 2021 WL 3674727, at *13 (D.D.C. Aug. 13, 2021), *aff'd sub nom. Matter of Quinteros*, No. 21-cv-7087, 2022 WL 3970927 (D.C. Cir. Sept. 1, 2022) (quoting *Attkisson*, 113 F. Supp. 3d at 165). The same is true, *a fortiori*, where a case may be dismissed for lack of subject-matter jurisdiction. Courts in this District have even denied motions to expedite discovery where no motion to dismiss was filed, but the government—in an APA case— raised jurisdictional issues. *See Hemp Indus. Ass'n*, 2020 WL 12918344, at *2.

The same result should obtain here. Defendants have already raised threshold issues, which do not turn on factual disputes, that would resolve this case. *See* Pt. I.a., *supra*. The Court should resolve those arguments before permitting the premature discovery Plaintiff seeks. *See Attkisson*, 113 F. Supp. 3d at 165. Moreover, to the extent Plaintiff suggests that this factor cuts in its favor because Defendants have not yet moved to dismiss, Defendants' Rule 12 deadline is not for nearly another month. Defendants should not be required to prematurely move to dismiss simply to fend off a potential and unwarranted motion for expedited discovery.

### d. Plaintiff seeks discovery for an impermissible purpose.

Plaintiff initially couches its motion as targeted at ascertaining whether its members have suffered, or imminently will suffer, irreparable harm. *See* Mot. at 12. As a basic matter, movants for temporary restraining orders and preliminary injunctions alike bear the burden of demonstrating irreparable harm. *See generally* Order Denying TRO (temporary restraining order); *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024) (preliminary injunction). In this case, Plaintiff has already failed

to carry that burden. Order Denying TRO at 13. It cannot be the case that a naked desire to "explore" Defendants' evidence, Mot. at 13 (citation omitted), which has already been deemed sufficient to rule out irreparable harm, Order Denying TRO at 13, is a legitimate end of expedited discovery. *See* Proposed Disc. Requests at 4-7 (seeking additional details on aspects of Defendants' declarations). The same is even more true of attempts to uncover evidence to support theories the Court has already rejected as "entirely conjectural." Order Denying TRO at 12 (describing Plaintiff's identity-theft and data-breach theories); *see* Proposed Disc. Requests at 4-7 (seeking discovery on employees' training programs, "actual usage" of systems, software, guidelines for system access, onboarding processes, and security policies). Indeed, applying a somewhat different standard to motions for expedited discovery, many districts *require* that a plaintiff show the very same irreparable harm Plaintiff has already failed to show. *E.g.*, *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005); *St. Louis Grp., Inc. v. Metals & Additives Corp., Inc.*, 275 F.R.D. 236, 240-41 (S.D. Tex. 2011). Thus, to the extent, that Plaintiff's proposed discovery bears on irreparable harm at all, that purpose is illegitimate.

Tellingly, Plaintiff's requests sweep well beyond even notional connections to irreparable harm, to encompass the merits of this dispute (and beyond). This purpose, too, is improper. *See Assi v. Hanshaw*, 625 F. Supp. 3d 722, 732–33 (S.D. Ohio 2022) ("Discovery . . . is not meant to allow parties to discover whether a claim in fact exists, but rather to provide a process for gathering evidence to substantiate an already plausibly-stated claim.").

For example, only the first subpart of the first proposed interrogatory addresses which employees have access to which systems, *see* Proposed Disc. Requests at 4, which in turn relates (if only tangentially) to the "context" within which the relevant disclosures took place, *see* Order Denying TRO at 10. The other thirteen interrogatories would inquire into job responsibilities, employment status, and contents of each system, Proposed Disc. Requests at 4, which (if anything) relate to the

19

merits of Plaintiff's claims of violations of the Privacy Act and Internal Revenue Code, as well as into which systems have actually been accessed and when, and what software the agency uses, *id.* at 5, which are legally immaterial aspects of the agency's day-to-day operations. The ten proposed requests for production are to similar effect—by and large, they are targeted at the merits of Plaintiff's claims. *Id.* at 5-6 (seeking materials related to employees' need to know certain information and employment status). So too for the proposed depositions. *See* Mot. at 17 (indicating a desire to depose declarants on the same topics as the written discovery); Proposed Disc. Requests at 7 (specifying largely merits-based topics for a proposed 30(b)(6) deposition). Tellingly, Plaintiff's motion itself also focuses largely on the merits of the case. *See, e.g.*, Mot. at 14-16 (focusing on employment status at a particular agency and "need to know").

### e. Plaintiff's proposed discovery would impose a heavy burden on Defendants.

Despite repeatedly (and without elaboration) characterizing its requests as "limited," Mot. at 16-17, Plaintiff's requested depositions and written discovery would in fact impose a significant burden on Defendants. Start with the request for depositions of Adam Ramada and Thomas Flagg, Defendants' two declarants. As the very fact of their selection as declarants suggests, these two individuals are extraordinarily busy, and essential to the Department's efficient operations. Preparing for and undergoing depositions would distract them from their responsibilities. Plaintiff's request for a 30(b)(6) deposition is also burdensome, and should be rejected in full. Unlike standard fact depositions, Rule 30(b)(6) depositions "can impose considerable burdens on the opposing party" because preparation of the witness "extends to all information reasonably available to the responding organization." 8A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2103 (3d ed.). It is therefore "considerably more challenging" to prepare individuals to testify in response to a Rule 30(b)(6) notice than an ordinary deposition. *Id.* The burden of preparing representatives to give such a deposition, and to provide the necessary written discovery that would precede such depositions,

would alone create an enormous burden on Defendants.  Although Plaintiff has not specified the period of time it like discovery to be completed in, the very nature of the relief it contemplates requesting—a preliminary injunction—entails abbreviated timeframes and expedited case work, augmenting that burden.

Such a burden is also completely unnecessary.  The deposition topics (which, with respect to the proposed depositions of Mssrs. Ramada and Flagg, do not appear on the face of Plaintiff's proposed notices, but only in its motion), as Plaintiff concedes, overlap entirely with the written discovery Plaintiff has requested.  *See* Mot. at 17 ("UCSA proposes three depositions—one each of Mr. Ramada and Mr. Flagg and a Rule 30(b)(6) deposition—which would be time-limited to two and a half hours each, and *cover the same limited set of topics as the proposed interrogatories and document requests.*" (emphasis added); *see also* Proposed Disc. Requests at 7 (describing 30(b)(6) topics).  Even were this duplication justifiable, the topics of the proposed written discovery are, as explained above, almost entirely irrelevant to the question of irreparable harm that the Court found dispositive in its order denying a temporary restraining order.  Rather, those topics go to the merits, to the extent they are relevant at all.  In any event, depositions given by agency officials fall well outside the administrative record that the Court is supposed to review in adjudicating the merits of this dispute (assuming there is a final agency action at all).  Even if such extra-record inquiries were permissible and directed at proper topics (and Defendants do not concede that they are), the proposed topics are properly addressed through an administrative record, and only potentially thereafter through written discovery.  Indeed, "[w]hen the proposed deposition topics are complex and highly technical, or involve legal issues that require the assistance of an attorney"—such as the topics Plaintiff proposes about Defendants' system access policies, organizational structure, training, and system usage—"the interrogatory is the preferred device" for obtaining discovery.  *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015); *see also Capital Eng'g & Mfg. Co. v. Weinberger*, 695 F. Supp. 36, 41 (D.D.C.

1988) (observing that even when plaintiffs are entitled to discovery against an agency, they are not "necessarily entitled to ... depositions and potentially voluminous documentary materials").

Plaintiff's written discovery requests also impose significant burdens. Through their interrogatories and requests for documents, it seeks information about Department of Education systems and systems access (including "security authorizations, instructions, or protocol[s]"), employee training, employment records, and data that has been accessed, with respect to several Department of Education employees. *See* Proposed Disc. Requests at 4-6. Plaintiff is, effectively, seeking wholesale discovery on the very merits of its claims in an abbreviated, unduly early posture. This is best illustrated by Plaintiff's proposed interrogatories. The burden of responding to interrogatories is substantial because interrogatory responses are not part of the contemporaneous administrative record that should cabin this Court's decision in an APA case, and therefore lack even potential overlap with the issues the Court must eventually decide. Plaintiff's proposed interrogatories, which contain 14 discrete subparts, constitute more than half of the federal limit across an entire civil (non-APA) case. *See* Fed. R. Civ. P. 33(a)(1).

Courts in this District have found the sort of expedited discovery Plaintiff proposes to be "highly burdensome." *Landwehr*, 282 F.R.D. at 4 (noting that plaintiffs' proposed discovery would include "serv[ing] discovery and receiv[ing] responses; meet[ing]-and-confer[ring] regarding any deficient responses and fil[ing] any resulting discovery motions; [and] coordinat[ing] depositions of former high-level executives (with, presumably, very busy schedules) . . ..."). And as explained above, this expedited discovery is not needed to resolve this case. This is an APA case, and APA cases are limited to the administrative record. *See* 5 U.S.C. § 706. While Defendants strongly contend that this case is not reviewable under the APA, to the extent that Plaintiff claims there is an agency action, it is allegedly the act of granting certain government employees access to certain government information systems. *See* Compl. ¶¶ 11, 53; TRO Mot. at 24. The D.C. Circuit has previously held, for example,

that the District Court does not err in refusing to compel production of the administrative record before deciding a motion to dismiss, where the administrative record is not necessary to resolve the claims at hand. *See Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266-67 (D.C. Cir. 2001). As courts in this District have noted, defendant agencies in APA cases need not be compelled to produce discovery prior to the Court resolving threshold issues on a motion to dismiss. *Colo. Wild Horse & Burro Coal.*, 527 F. Supp. 2d at 8-9 (rejecting motion for discovery in face of motion to dismiss where plaintiffs failed to show final agency action and cognizable APA claim).

As such, the Court should not order expedited discovery where discovery is not needed to resolve Defendants' forthcoming motion, *see* Pt. III.a., *supra*, especially where Plaintiff has proposed such burdensome discovery.

### f.  Plaintiff's requests are impermissibly overbroad.

Courts disfavor broad expedited discovery, especially discovery requests that cut to the merits of a plaintiff's case. *Guttenberg*, 26 F. Supp. 3d at 98; *see also True the Vote*, 2014 WL 4347197, at *7. Here, Plaintiff has claimed a desire to identify irreparable harm. Mot. at 13. Following the contours of the Court's previous order, that would mean (at most, as Defendants have already offered evidence on these points in the form of declarations) confirming that the relevant individuals with access to personally identifiable information work for the federal government, and documenting their obligations to keep that information confidential (to the extent those obligations flow from factual, in addition to legal, sources). Order Denying TRO at 10-13. But Plaintiff's proposals sweep far beyond these narrow contours, to include need to know (a merits issue), internal processes, employee training, employment status and history, historical data access, and the use of certain information technology systems. *See* Proposed Disc. Requests at 4-7. As outlined above, Pt. III.d., *supra*, the breadth of Plaintiff's request does not fit its stated purpose or, indeed, any permissible purpose; thus, it should be rejected.

IV.    **An Administrative Record, Not Discovery, Should Be the First Resort**

In keeping with the APA principles identified above, the Court's review in this case should be limited to an administrative record.  In this District, the "general practice" is to require federal defendants to produce the record, if at all, only after adjudicating threshold arguments whose resolution does not depend on the record.  *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022). Defendants maintain that no administrative record exists in this case because Plaintiff has not alleged final agency action.  *See* Joint Statement Regarding an Administrative Record at 3.  If the Court nevertheless deemed it necessary to order Defendants to produce information at this early stage, however, such production should—following conventional APA practice—take the form of an administrative record, not discovery.  *See, e.g.*, Order, *Am. Fed'n of Teachers v. Bessent*, 8:25-cv-430 (D. Md. Feb. 24, 2025) (ordering defendants to produce an administrative record in conjunction with preliminary injunction proceedings, and instructing plaintiffs thereafter to identify any "limited" discovery requests); *Chef Time 1520 LLC v. SBA*, 646 F. Supp. 3d 101, 110-11 (D.D.C. 2022).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for expedited discovery.

Dated: March 10, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

*/s/ Simon Gregory Jerome*
SIMON G. JEROME
D.C. Bar. No. 1779245
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W., Twelfth Floor
Washington, D.C. 20005
Tel: (202) 514-2705
Email: simon.g.jerome@usdoj.gov

*Counsel for Defendants*