UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| University of California Student Association,<br><br>   Plaintiff,<br><br>    v.<br><br>Denise Carter, in her official capacity as Acting Secretary of Education, et al.,<br><br>   Defendants. | Civil Action No. 25-354 (RDM) |

REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

Daniel A. Zibel
(DC Bar No. 491377)
Alexander S. Elson
(DC Bar No. 1602459)
Tyler S. Ritchie
(DC Bar No. 90018119)
National Student Legal Defense Network
1701 Rhode Island Ave. NW
Washington, DC 20036
(202) 734-7495

Adam R. Pulver
(DC Bar No. 1020475)
Nandan M. Joshi
(DC Bar No. 456750)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Dated: March 12, 2025

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ....................................................................................................................................... 1

    I.    Discovery is appropriate in this case. ........................................................................ 1

    II.   Discovery is appropriate at this time. ........................................................................ 5

    III.  The scope of the proposed discovery is appropriate. ................................................. 7

CONCLUSION .................................................................................................................................... 9

**INTRODUCTION**

Defendants' opposition to Plaintiff's motion for expedited discovery is premised on three arguments: (1) discovery is not justified at all; (2) discovery is untimely, as it is paradoxically both too late and too early, and (3) the proposed discovery is overbroad. Each of these arguments should be rejected. As explained further below, discovery is necessary and appropriate at this time to ensure effective judicial review in connection with Plaintiff's contemplated motion for a preliminary injunction. Moreover, the discovery sought is well-tailored to three questions that this Court suggested are relevant to the irreparable harm analysis: (1) who has been granted access to the information; (2) for what purposes is that information being used or likely to be used; and (3) what policies and practices regarding security of that information are in place and have been followed. As such, the Court should exercise its broad discretion to authorize the requested discovery.

**ARGUMENT**

**I.     Discovery is appropriate in this case.**

While Defendants accuse Plaintiff of "barely engag[ing] with the rarity of discovery in APA cases," ECF 25 at 15, Plaintiff has acknowledged that, in APA cases, "the court's review is typically based on the administrative record rather than a record generated through discovery." ECF 24-1 at 14. But, as it explained in its opening memorandum, the D.C. Circuit and district courts have recognized exceptions to that default rule. *Id.* at 14–15. Specifically, courts may authorize "discovery 'to ascertain the contours of the precise policy'" under review—particularly where, as here, defendants dispute the existence of a final agency action. *Id.* at 14–15 (quoting *Hispanic Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018)). Further, courts may consider extra-record evidence "in determining whether a party will suffer irreparable harm in the absence of injunctive relief." *Id.* at 16 (quoting *Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*, 817 F.

1

Supp. 2d 1290, 1300 (D. Or. 2011) and collecting cases).

Defendants' assertion that these principles do not apply here rests on the notion that, despite their prior statement that "there is no administrative record underlying the disputed issues," ECF 15 at 3, they will nevertheless furnish an administrative record useful to resolving this case. But the administrative record produced in in *American Federation of Teachers v. Bessent*, No. CV DLB-25-0430 (D. Md.), filed in this case at ECF 26-1, makes clear that discovery "provides the only possibility for effective judicial review." *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 458 (D.C. Cir. 1994). The record in *AFT* does not allow Plaintiff, or the Court, to meaningfully assess the reasons why DOGE-affiliated individuals were granted access to the relevant systems, how the information being disclosed by the Department of Education (ED) to those individuals is being used or is likely to be used, or Defendants' and the DOGE-affiliated individuals compliance with privacy protections.[1] To the contrary, the administrative record filed in *AFT* highlights the need for discovery.

For one, the majority of the documents post-date the decision to grant DOGE-affiliated individuals access to the record systems at issue. That decision was first reported publicly on February 3, 2025, *see* ECF 1, ¶ 52., but the memorandum purportedly granting DOGE access to all IT systems is dated February 5. ECF 26-1 at 26. The agreements between DOGE and ED, and between ED and the Office of Personnel Management, are dated February 12, 2025, ECF 26-1 at 5, 8—nearly a week after this case was filed, and suggesting an attempt to create a post hoc paper trail. Even so, that post hoc record is deficient, providing absolutely no information as to how

---

[1] Given that Defendants do not suggest the administrative record in this case will be any different than that they submitted in *AFT v. Bessent*, their objections to Judge Bates's order in *AFL-CIO v. DOL* based on his failure to first consider the sufficiency of the administrative record before ordering discovery in that case, ECF 25 at 15–16, is irrelevant here.

2

DOGE affiliates are using the data at issue, much less sufficient information to conclude whether access to that information was properly granted based on the detailees' need to know. The three-paragraph February 5 memorandum that purports to "document[] the need to know" and authorize access says nothing other than summarizing the President's Executive Order. ECF 26-1 at 26.

What the record in that case does say is, at the very least, in tension with the evidence submitted in this case. For example, Mr. Ramada provided a sworn statement that DOGE-affiliated detailees are responsible for "auditing contract, grant, and related programs for waste, fraud, and abuse" and "identify[ing] contracts and grants that are wasteful, abusive, or inconsistent with leadership's policy priorities." ECF 18-2 at ¶¶ 5, 8. In contrast, the documents filed in *AFT* define the tasks of DOGE-affiliated individuals at an extraordinarily high level of generality—and in terms that do not align with Mr. Ramada's representations. In the "Terms and Conditions for Reimbursable Work" agreement, for one, the scope of work for DOGE employees detailed to ED is limited to "support[ing] IT modernization at ED." ECF 26-1 at 2 at 5. Auditing "for waste, fraud, and abuse" as Mr. Ramada claimed in this litigation, ECF 18-2 at ¶ 5, is not "IT modernization" under even the broadest sense of that term. And while Mr. Ramada attested that, including himself, there are six employees at ED "who play the principal role in helping to help advance the mission of President Trump's Executive Order 14,158," ECF 18-2 at ¶ 2, the *AFT* record only mentions four such individuals.

The *AFT* record also provides no information about which systems of records the DOGE affiliates have been granted access to, and provides no records reflecting the agency's conclusion that granting such access was consistent with the Privacy Act, the Internal Revenue Code, or the Administrative Procedure Act's prohibition on arbitrary or capricious decisionmaking. It does not contain any information regarding Mr. Ramada's discovery that one of the DOGE affiliates indeed

had *not* completed ethics or information security trainings before being granted access to the records at issue, or the decision to allow that individual to continue to access those records while he completed those trainings. *See* ECF 18-2 at ¶ 9.

Further, Defendants do not dispute the general notion that courts may look outside the record, and authorize discovery, with respect to issues of injury, as explained in Plaintiff's opening memorandum. *See* ECF 24-1 at 16; c*f. Pub. Citizen, Inc. v. Trump*, 435 F. Supp. 3d 144, 151 (D.D.C. 2019) (noting court "had authoriz[ed] Plaintiffs to serve limited interrogatories and requests for admissions on Defendants" related to harm); *Food & Water Watch v. Trump,* 357 F. Supp. 3d 1, 8 (D.D.C. 2018) (similar). Nor do they dispute that courts frequently grant expedited discovery about the disclosure of confidential information to enable plaintiffs to show harm for purposes of a preliminary injunction. *See, e.g.*, *FW-CO, Inc. v. Schulz*, No. 1:25-CV-00254-NYW-TPO, 2025 WL 588350, at *6 n.13 (D. Colo. Feb. 24, 2025); *J.P. Morgan Sec. LLC v. Liban*, No. 1:23-CV-00798-LMM, 2023 WL 3664820, at *3 (N.D. Ga. Mar. 1, 2023).

Rather, they appear to assert that discovery would be irrelevant to the question of irreparable harm in this case. But while this Court concluded that Plaintiff had failed to adequately establish irreparable harm to warrant a TRO, the Court also made clear that that conclusion was based solely on the record before it. *See, e.g.*, ECF 20 at 12 n.4 (specifying conclusions were based on "the record [as it] now stands"). In particular, the Court relied on the representations in Mr. Ramada's declarations as to which individuals have access to the records at issue, the purposes for which they are accessing those records, and the generic representation that these individuals will follow the law. ECF 12 n.4 at 20–21. While the representations of Mr. Ramada and Defendants' counsel may have foreclosed Plaintiff's ability to meet the "high bar" of establishing a nonspeculative irreparable injury, ECF 20 at 10, those representations did not, as Defendants assert, "rule out

4

irreparable harm," ECF 25 at 25. As explained in Plaintiff's opening memorandum, Defendants' declarations and subsequent developments raise substantial factual questions relevant to that question. ECF 24-1 at 18–21. Moreover, the administrative record filed in *AFT* raises additional questions about the completeness and/or accuracy of Mr. Ramada's declarations. Contrary to Defendants' accusation, examining the inconsistencies in the representations Defendants' employees and counsel have made to the Court is hardly a "fishing expedition." ECF 25 at 6.

Defendants also argue that the proposed discovery is irrelevant in light of the Court's suggestion that "there is at least a 'possibility' of compensatory relief at a later date." ECF 20 at 13. Plaintiff intends to argue that this aspect of the district court's TRO order was in error, given that, as the District of Maryland has concluded, the "continuing, unauthorized disclosure of the plaintiffs' sensitive personal information to DOGE affiliates is irreparable harm that money damages cannot rectify." *AFT v. Bessent*, No. CV DLB-25-0430, 2025 WL 582063, at *14 (D. Md. Feb. 24, 2025) (collecting cases). Moreover, there is no possibility of compensatory relief based on the arbitrary and capricious nature of DOGE's action, and no possibility of compensatory relief for emotional distress damages for violations of the Privacy Act. *Cf. New York v. Trump*, No. 25-CV-01144 (JAV), 2025 WL 573771, at *21–23 (S.D.N.Y. Feb. 21, 2025) (concluding that granting DOGE affiliates access to Treasury systems was likely arbitrary and capricious, even though it was not likely violative of the Privacy Act). Injunctive relief, which is not available under the Privacy Act or Internal Revenue Code, is the only way to rectify the continuing violation.

## II.   Discovery is appropriate at this time.

Defendants argue that Plaintiff's motion for discovery is simultaneously too late and too early. As to the former, they assert the instant motion is improper because Plaintiff did not initially seek discovery to support its TRO motion. The rapid nature of briefing on a TRO, however, both generally and in this case, precludes discovery in connection with such a motion. And there is no

support for the notion that a party's failure to seek discovery in connection with a TRO motion waives the right to seek discovery before submitting a preliminary injunction motion. As for Defendants' observation that Plaintiff filed this motion two weeks after this Court denied the TRO, Defendants do not explain the relevance of this temporal point, and they do not suggest they have suffered any prejudice due to the passage of time.

Defendants also argue that the motion is too early, asking the Court to await its ruling on their not-yet-filed motion to dismiss. Such a months' long delay would effectively deprive Plaintiff of the ability to seek preliminary relief and would be inequitable. Defendants previously advised the Court that they would be filing a motion to dismiss "concurrently with their ... opposition to Plaintiff's motion for a temporary restraining order," which was due on February 13, 2025. ECF 15 at 3. They did not do so, and despite Plaintiff's counsel's request to set an agreed-upon briefing schedule for any such motion, they still have not done so, nearly a month later.

While Defendants assert that they intend to make "threshold arguments" in their motion to dismiss, they are unlikely to prevail on any of those arguments, as explained by Plaintiff in connection with the TRO motion. To start, while Defendants insist no further record is necessary to resolve these arguments, ECF 25 at 6, this Court has indicated otherwise—stating that "whether USCA has standing to sue and has stated a claim upon which relief may be granted" are questions "better answered on a more complete record." ECF 20 at 9. Further, based on the allegations of the complaint, which will govern any motion to dismiss, Plaintiff has stated plausible claims for relief. As to standing, Plaintiff has alleged injury that is analogous to that recognized by the common law tort of intrusion upon seclusion. *See* ECF 17 at 9–12 (TRO Reply Brief); *see also* ECF 19 at 9 n.3 (holding "that UCSA's theory of standing ... is [not] so implausible that the Court lacks authority even to consider UCSA's [TRO] motion"). Indeed, in *Alliance for Retired*

6

*Americans v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 740401 (D.D.C. Mar. 7, 2025), Judge Kollar-Kotelly recently recognized that plaintiffs challenging the Department of Treasury's grant of access to sensitive systems to DOGE affiliates had standing based on this same theory. *Id*. at *13–*18. And as explained in connection with the TRO motion, Defendants' decision to grant access to sensitive record systems to DOGE-affiliated individuals constitutes a final agency action under *Bennett v. Spear*, 520 U.S. 154, 178 (1997). *See* ECF 17 at 10–13. While the February 5 memorandum produced in the *AFT* case, ECF 26-1 at 26, is deficient in many aspects, it makes the finality and binding nature of the agency's decision clear.  Further, Defendants' suggestion that the APA may not be used to challenge a policy of disclosing student and borrower information to individuals as unlawful is foreclosed by the D.C. Circuit's decision in *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008). *See* ECF 17 at 11–12.

Finally, the fact that Plaintiff did not file its preliminary injunction motion before seeking discovery is not dispositive. The parties' briefing and the Court's ruling on the TRO motion have revealed the need for further evidence before a preliminary injunction motion can be resolved. And given the requirement that a party file evidence in support of a preliminary injunction along with that motion, *see* LCvR 65.1(c), in conjunction with the vague factual record, pre-motion discovery makes more sense here than requiring the filing of a placeholder preliminary injunction motion while discovery proceeds.

**III.     The scope of the proposed discovery is appropriate.**

Defendants argue that much of the proposed discovery is directed at an "impermissible purpose" because it "encompass[es] the merits of this dispute (and beyond)." ECF 25 at 25. For example, Defendants object that the proposed interrogatories relate only to the merits where they seek information regarding the responsibilities of individuals who have been granted access to sensitive information, and to what data they have been granted access. *Id.* at 19–20. That the merits

7

and irreparable harm may overlap is of no importance. For instance, the reasons why any particular DOGE-affiliated individual has a "need" to access information about students and borrowers shows how that information will likely be used. Indeed, the Court already recognized the relevance of job responsibilities to the irreparable harm inquiry in its TRO decision, reasoning that the DOGE-affiliated individuals' job responsibilities (as they were described by Mr. Ramada) "should [not] involve disclosure of any sensitive, personal information about any UCSA members." ECF 20 at 12. And it would seem obvious that knowing what personal information has been disclosed by ED to DOGE-affiliated individuals is relevant to determining whether such disclosure has created an irreparable injury.

Defendants also argue that the proposed discovery is overly burdensome, but their arguments about burden rehash their arguments as to allowing discovery at all. To the extent Defendants argue that ED and DOGE employees "are extraordinarily busy," the busy-ness of an individual with properly discoverable information is not a reason to deny discovery. *See, e.g.*, *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12CV525, 2014 WL 12544827, at *3 (E.D. Va. Jan. 9, 2014) (holding that, "without more, a 'busy schedule' is not enough" to justify quashing a subpoena); *Six W. Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) ("the fact that [a witness] has a busy schedule cannot shield that witness from being deposed"). Notably, the proposed deponents are not Principal Officers or otherwise the kind of high-ranking government officials that courts have been reticent to require be deposed due to the disruptive impacts on their job responsibilities. *See In re U.S. Dep't of Education*, 25 F.4th 692 (9th Cir. 2022) (Secretary of Education); *In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015) (EPA Administrator); *In re United States*, 197 F.3d 310 (8th Cir. 1999) (Attorney General and Deputy Attorney General). And while Defendants' make general assertions that Rule 30(b)(6)

depositions "can" be burdensome, ECF 25 at 26, the insufficiency of the *AFT* Administrative Record and the vague language used in the Declarations submitted so far indicate that there is no more efficient way for Plaintiff and the Court to obtain the information necessary for resolution of the contemplated preliminary injunction.

## CONCLUSION

For the foregoing reasons and those contained in their opening memorandum, Plaintiff respectfully requests that this Court grant its motion and order Defendants to respond to its proposed discovery.

Dated: March 12, 2025                                     Respectfully submitted,

/s/ Adam R. Pulver
Adam R. Pulver (DC Bar #1020475)
Nandan M. Joshi (DC Bar # 456750)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000


Daniel A. Zibel (DC Bar No. 491377)
Alexander S. Elson (DC Bar No. 1602459)
Tyler S. Ritchie (DC Bar No. 90018119)
National Student Legal Defense Network
1701 Rhode Island Ave. NW
Washington, DC 20036
(202) 734-7495