**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNIVERSITY OF CALIFORNIA STUDENT ASSOCIATION, <br><br> *Plaintiff*, <br><br> v. <br><br> LINDA McMAHON, *Secretary of Education*,[1] *et al.*, <br><br> *Defendants*. | Civil Action No. 25-354 (RDM) |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Plaintiff's motion for expedited discovery, Dkt. 24, Defendants'

opposition, Dkt. 25, and Plaintiff's reply, Dkt. 29. As explained below, the Court concludes that,

given the nature of Plaintiff's claims and the procedural posture of this case, it would be

premature to authorize discovery. The Court will, accordingly, deny Plaintiff's motion without

prejudice, and will order the government to promptly produce the administrative record. If

appropriate, Plaintiff may renew its motion after the parties and the Court have the opportunity to

consider the administrative record and to determine whether it will allow for meaningful judicial

review.

The Court has previously described the background in this case, *see* Dkt. 20, and will

only briefly recount the relevant history here. Plaintiff University of California Student

Association ("UCSA") filed this action against the Department of Education and the Secretary of

Education (collectively, the "Department"), asserting three claims under the Administrative

---

[1]  Linda McMahon is automatically substituted for Acting Secretary Denise Carter as the proper official-defendant pursuant to Federal Rule of Civil Procedure 25(d).

Procedure Act ("APA").  Dkt. 1 at 16–17 (Compl. ¶¶ 58–70).  According to the complaint, the Department stores student data on various internal computer systems, and it has recently provided access to these data to individuals employed by the Department of Government Efficiency ("DOGE").  *Id.* at 1 (Compl. ¶ 1).  UCSA alleges that, in doing so, the Department has acted—and continues to act—contrary to the mandates of the Privacy Act, 5 U.S.C. § 552a, and § 6103 of the Internal Revenue Code ("IRC").  Dkt. 1 at 16–17 (Compl. ¶¶ 58–70).  UCSA's three APA claims are predicated on violations of these two substantive statutes.  *Id.*  Although the Privacy Act and § 6103 of the IRC contain their own private rights of action, *see* 5 U.S.C. § 552a(g)(1); 26 U.S.C. § 7431(a)(1), UCSA did not invoke those provisions here.

Shortly after filing its complaint, UCSA filed a motion for a temporary restraining order, seeking to enjoin ED's "ongoing exposure" of its members' personal data to DOGE employees.  Dkt. 9 at 29.  The Court denied that motion on the grounds that UCSA had failed to carry its burden of demonstrating that it or at least one of its members would suffer irreparable harm in the absence of emergency injunctive relief.  The Court reasoned that mere "exposure" of personal data to government employees, without more, was unlikely to constitute an irreparable injury, even if a violation of the Privacy Act or the IRC.  *See* Dkt. 20 at 9–13.

Two weeks later, UCSA filed the pending motion for expedited discovery.  *See* Dkt. 24-1.  UCSA explains that it plans to file a motion for a preliminary injunction and that it needs to obtain information from the Department to determine whether there is "a sufficient risk of irreparable harm" to support that motion.  Dkt. 24-1 at 19.  UCSA's requests include seven "interrogatories (plus subparts)," ten document requests, and "three depositions."  *Id.* at 21–22. Although UCSA requests expedited treatment, it does not propose a timeline.

The Department filed an opposition, arguing, among other things, that because UCSA's claims all arise under the APA, any review of the Department's conduct should be limited to the administrative record.  *See* Dkt. 25 at 14.  The Department's opposition references an administrative record it recently filed in a similar case pending in the District of Maryland, *American Federation of Teachers v. Bessent*, No. 25-cv-430 (D. Md.) ("*AFT*"), which prompted the Court to order the Department to file that record on the docket in this case, *see* Min. Order (Mar. 11, 2025).  The Department complied, Dkt. 26, and UCSA filed its reply, Dkt. 29. UCSA's motion is now ripe for decision.

### a.

In cases arising under the APA, the Court's review is limited to "the whole record or those parts of it cited by a party."  5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) ("[I]t is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." (internal quotation marks omitted)).  Discovery is therefore unavailable in APA cases, except in "two circumstances": (1) where the party seeking discovery makes "a strong showing" of "bad faith or improper behavior"; or (2) "in the rare case in which the record is so bare as to frustrate effective judicial review."  *Cmty. for Creative Non-Violence v. Lujan*, 908 F.2d 992, 997–98 (D.C. Cir. 1990).  This latter category includes cases in which a claim is premised on an agency's alleged unlawful policy, yet the record does not reveal "whether [the] agency's challenged policy exists."  *Hisp. Affs. Project v. Acosta*, 901 F.3d 378,

386 n.4 (D.C. Cir. 2018).[2]  In those rare instances, tailored discovery is appropriate to ascertain the "contours" of the challenged policy.  *Id.* at 388.

This limit on discovery, which flows from the text of the APA itself, *see* 5 U.S.C. § 706, stands in stark contrast to the Court's broad discretion to order discovery under Federal Rule of Civil Procedure 26 in non-APA cases.  It reflects Congress's judgment that the civil discovery rules are incompatible with the APA, and their application to federal agencies would likely hinder the workings of another branch of government.  *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).  "Were the rule otherwise, every challenge to administrative action would turn into a fishing expedition into the motives of the defendant agency."  *Off. of Foreign Assets Control v. Voices in Wilderness*, 382 F. Supp. 2d 54, 63 (D.D.C. 2005).

Here, UCSA has not demonstrated that either exception applies, especially given that the Department has yet to even file the administrative record.  Turning to the first exception, UCSA lacks direct evidence of the Department's bad faith or improper behavior, but in an effort to carry its burden, UCSA points to the Department's "broad, conflicting descriptions of DOGE's work." Dkt. 24-1 at 20.  UCSA observes, for example, that the Department previously "stated that DOGE's work at the Department 'focused on return to in-person work, restoring accountability for employees who have policy-making authority, restoring accountability for senior career executives, and reforming the federal hiring process to focus on merit.'"  *Id.* at 19–20.  Later, however, the Department's declarant, Adam Ramada, "identified different—and even broader—

---

[2] Even if one of these two circumstances apply, a party seeking *expedited* discovery must also demonstrate the "reasonableness of the request in light of all of the surrounding circumstances." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014).  Although that inquiry does not turn on any fixed criteria, in the past, this Court has considered: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made."  *Id.* at 97 (citation omitted).

categories of work . . . including 'auditing contract, grant, and related programs for waste, fraud, and abuse.'" *Id.* at 20. UCSA identifies similar "inconsistencies" between the Department's statements in this case and the administrative record filed in *AFT*. Dkt. 28 at 5–7 (observing, for example, that Mr. Ramada attested that there are "six employees at ED," yet "the *AFT* record only mentions four such individuals"). In UCSA's view, these "morph[ing]" descriptions of DOGE's work make it "impossible" for "[UCSA], or the Court," to assess whether the Department is acting lawfully. Dkt. 24-1 at 20. The Court, however, is unpersuaded that these admittedly evolving statements, standing alone, provide the requisite "strong support" for an assertion of bad faith or improper behavior.

UCSA comes closer to meeting its burden with respect to the second exception—that is, the exception that permits discovery when necessary for effective judicial review. As explained above, the Court directed the Department to file the administrative record that it had previously filed in a similar case, *American Federation of Teachers v. Bessent*, No. 25-cv-430 (D. Md.), to foreshadow what the Department might file in this case. The administrative record in that case includes documentation relating to the detailing of employees from one agency to another, the ethics rules and regulations applicable to detailees, and other employment documentation. *See generally* Dkt. 26-1. That administrative record also includes a memorandum from the Department's Director of Information Assurance Services, which summarizes the mission of the DOGE as set forth in the January 20, 2025 Executive Order, grants "the Department of Education DOGE team full and prompt access to all unclassified IT systems and data," and requires adherence to various rules of behavior. *Id.* at 26–30. The *Bessent* administrative record does not, however, offer any specific information about who has been granted access to which particular systems and data; for what specific purposes that access was granted; whether the

Department has permitted the sharing of data with others outside the Department and, if so, with whom; or how the sensitive data at issue in this litigation are being used.

UCSA argues that the administrative record produced in the *Bessent* case demonstrates that "discovery 'provides the only possibility for effective judicial review.'" Dkt. 28 at 4 (quoting *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 458 (D.C. Cir. 1994)). But that record is not entirely devoid of content and, more importantly, it is not the record in this case. It is not a foregone conclusion that the record in this case will track the record in *Bessent*; notably, the administrative record in *Bessent* was filed under an extremely expedited schedule, and, here, the Department might well conclude that it would rather file a more expansive administrative record than face the prospect of discovery. In any event, without the administrative record in *this* case, the Court is unable to conclude that the second exception applies. *See Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 928 (D.C. Cir. 2008) (explaining that further factual development on challenged policy was warranted after finding that "the record . . . [wa]s deficient"). If the administrative record is sufficient to permit meaningful review, that should put the question of discovery to rest.

**b.**

One additional matter requires attention. Although UCSA does not say so expressly, it appears to contend that there is an additional exception to the APA's limit on discovery where a party has reason to believe that it will suffer an imminent, irreparable injury, but the defendant agency is gatekeeping the relevant facts. Assuming there is such an exception, the Court is unpersuaded that it would apply on this record. UCSA argues that expedited discovery is necessary because the information it seeks bears on the "question" of whether UCSA's members are at "sufficient risk of irreparable harm." Dkt. 24-1 at 18. UCSA contends—and the Court

agrees—that this question turns on "to whom [the Department] has granted access, for what purposes, and under what conditions." *Id.* at 7. Given the sensitive nature of the information stored in Department's systems, it is not difficult to imagine the myriad ways in which that information could be abused, causing irreparable injuries. By way of example, personal information could be used by the government for harassment, public disclosure of private matters, or unlawful selective prosecution. The Court does not doubt that this type of conduct—whether ongoing or threatened—would be more than sufficient to invoke such an exception. UCSA, however, has failed to offer any evidence even suggesting that the Department is doing anything of that nature. UCSA offers only speculation that, with the data in DOGE's hands, there is a "risk" of various irreparable injuries, such as "identity theft." Dkt. 9 at 33, 40. But UCSA offers no evidence that these risks have materialized (or are likely to materialize in the foreseeable future), and its "belief" that its members are at risk, "however earnest," is insufficient to overcome the presumption of regularity or the strictures of review under the APA. *Limnia, Inc. v. U.S. Dep't of Energy*, 347 F. Supp. 3d 25, 38 (D.D.C. 2018).

*   *   *

The Court, accordingly, concludes that expedited discovery is not warranted at this early stage. But that does not end the matter. Rather, the APA requires the Court to assess UCSA's request for information in steps, and the next step is for the Department to file the administrative record. *See* Local R. 7(n). The Department has previously represented that it plans to file a motion to dismiss and that an "administrative record [will] not [be] necessary to resolve [its] threshold arguments." Dkt. 15 at 3. Despite this assertion, the Court concludes that an administrative record is necessary at this time. As explained above, whether UCSA's members are at risk depends on to whom the Department has granted access, to which systems, for what

7

specific purposes, and under what conditions and circumstances.  The Court will, accordingly, order the Department to promptly produce the administrative record.

## CONCLUSION

For the reasons explained above, UCSA's motion for expedited discovery, Dkt. 24, is **DENIED** without prejudice.  It is further **ORDERED** that the Department shall file the *complete* administrative record on or before April 7, 2025.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 18, 2025