## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNIVERSITY OF CALIFORNIA STUDENT ASSOCIATION, <br><br> *Plaintiff*, <br><br> v. <br><br> LINDA McMAHON, in her official capacity as Secretary of Education, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00354-RDM |

## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................1

    I.     The United States DOGE Service and the Department of Education ........................1

    II.    This Litigation ........................................................................................................3

LEGAL STANDARDS................................................................................................................4

ARGUMENT................................................................................................................................6

    I.     The Court Lacks Subject-Matter Jurisdiction ........................................................6

        a.     Plaintiff lacks standing. ..............................................................................6

           i.     Plaintiff's members are not plausibly injured. .................................6

           ii.    Plaintiff's suit is not germane to its associational purposes...................9

           iii.   Participation of individual members is required....................................10

        b.    Defendants are immune from suit..............................................................11

    II.    Plaintiff Has Not Stated an APA Claim................................................................12

        a.     Plaintiff has not challenged final agency action. .................................12

        b.    Plaintiff has an adequate alternative remedy.........................................15

           i.    Privacy Act of 1974. ..................................................................16

           ii.    Internal Revenue Code ..............................................................18

CONCLUSION...........................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Agbanc Ltd. v. Berry,*
   678 F. Supp. 804 (D. Ariz. 1988).................................................................................................19

*Al-Zahrani v. Rodriguez,*
   669 F.3d 315 (D.C. Cir. 2012)...................................................................................................3

*Am. Fed'n of Teachers v. Bessent,*
   No. 25-1282 (4th Cir.)..............................................................................................................7

*Am. Nat'l Ins. Co. v. FDIC,*
   642 F.3d 1137 (D.C. Cir. 2011)................................................................................................5

*Arabzada v. Donis,*
   725 F. Supp. 3d 1 (D.D.C. 2024)..............................................................................................5

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................................................5

*Barclift v. Keyston Cred. Servs.,*
   585 F. Supp. 3d 748 (E.D. Pa. 2022).......................................................................................8

*Block v. Cmty. Nutrition Inst.,*
   467 U.S. 340 (1984)................................................................................................................15

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988)................................................................................................................15

*Cal. Cmtys. Against Toxics v. EPA,*
   934 F.3d 627 (D.C. Cir. 2019)................................................................................................13

*Cell Assocs., Inc. v. NIH,*
   579 F.2d 1155 (9th Cir. 1978).........................................................................................17, 18

*City of New York v. DOD,*
   913 F.3d 423 (4th Cir. 2019).............................................................................................14, 15

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)..................................................................................................................7

*Ctr. for Sustainable Econ. v. Jewell,*
   779 F.3d 577 (D.C. Cir. 2015)................................................................................................10

*Dew v. United States,*
   192 F.3d 366 (2d Cir. 1999)...................................................................................................16

*Elec. Privacy Inf. Ctr. v. U.S. Dep't of Comm.*,

928 F.3d 95 (D.C. Cir. 2019) ................................................................................................ 6, 10

*FAA v. Cooper*,

566 U.S. 284 (2012) ........................................................................................................... 16, 17

*Farst v. AutoZone, Inc.*,

700 F. Supp. 3d 222 (M.D. Pa. 2023) ........................................................................................ 8

*FDA v. All. for Hippocratic Med.*,

602 U.S. 367 (2024) ..................................................................................................................... 6

*FDA v. Wages & White Lions Invs.*,

No. 23-1038, 604 U.S. ----, 2025 WL 978101 (Apr. 2, 2025) ................................................... 8

*FDIC v. Meyer*,

510 U.S. 471 (1994) ................................................................................................................... 11

*Gadelhak v. AT&T Servs.*,

950 F.3d 458 (7th Cir. 2020) ...................................................................................................... 7

*Garcia v. Vilsack*,

563 F.3d 519 (D.C. Cir. 2009) .................................................................................................. 15

*Henkell v. United States*,

No. 96-cv-2228, 1998 WL 41565 (E.D. Cal. Jan. 9, 1998) ...................................................... 18

*Ho v. Garland*,

106 F.4th 47 (D.C. Cir. 2024) .................................................................................................... 6

*Hunstein v. Preferred Coll. & Mgmt. Servs., Inc.*,

48 F.4th 1236 (11th Cir. 2022) ................................................................................................... 8

*I.C. v. Zynga, Inc.*,

600 F. Supp. 3d 1034 (N.D. Cal. 2022) ...................................................................................... 8

*In re OPM Data Sec. Breach Litig.*,

928 F.3d 42 (D.C. Cir. 2019) ...................................................................................................... 8

*Jenkins v. Howard Univ.*,

123 F.4th 1343 (D.C. Cir. 2024) ........................................................................................... 4, 10

*Jerome Stevens Pharmaceuticals, Inc. v. FDA*,

402 F.3d 1249 (D.C. Cir. 2005) .................................................................................................. 3

*Jones v. U.S. Dep't of Hous. & Urban Dev.*,

No. 11 CIV. 0846 (RJD) (JMA), 2012 WL 1940845 (E.D.N.Y. May 29, 2012) ...................... 16

*Larson v. Domestic & Foreign Comm. Corp.*,
    337 U.S. 682 (1949) ............................................................................................................11

*Leopold v. Manger*,
    630 F. Supp. 3d 71 (D.D.C. 2022)......................................................................................4

*Lujan v. Nat'l Wildlife Federation*,
    497 U.S. 871 (1990) ...................................................................................................14, 15

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ..........................................................................................................12

*N. Am. Butterfly Ass'n v. Wolf*,
    977 F.3d 1244 (D.C. Cir. 2020)..........................................................................................5

*Norton v. S. Utah Wilderness Alliance*,
    542 U.S. 55 (2004) .....................................................................................................12, 14

*Parks v. IRS*,
    618 F.2d 677 (10th Cir. 1980) ..........................................................................................17

*Perry Cap. LLC v. Mnuchin*,
    864 F.3d 591 (D.C. Cir. 2017)..........................................................................................11

*Poss v. Kern*,
    No. 23-cv-2199, 2024 WL 4286088 (D.D.C. Sept. 25, 2024) ..........................................17

*Postal Police Officers Ass'n v. United States Postal Serv.*,
    719 F. Supp. 3d 56 (D.D.C. 2024)......................................................................................5

*Pub. Citizen, Inc. v. Trump*,
    297 F. Supp. 3d 6 (D.D.C. 2018)........................................................................................6

*Pub. Citizen v. U.S. Dist. Ct. for the Dist. of Columbia*,
    486 F.3d 1342 (D.C. Cir. 2007)........................................................................................12

*Rimmer v. Holder*,
    700 F.3d 246 (6th Cir. 2012) ............................................................................................16

*Soundboard Ass'n v. FTC*,
    888 F.3d 1261 (D.C. Cir. 2018)........................................................................................12

*Sussman v. U.S. Marshal Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007)........................................................................................17

*Thompson v. Trump*,
    590 F. Supp. 3d 46 (D.D.C. 2022)......................................................................................8

*TransUnion v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................ 7, 8, 9

*Travelers United, Inc. v. Hyatt Hotels Corp.*,
   No. 23-cv-2776 (CKK), 2025 WL 27162 (D.D.C. Jan. 3, 2025) ........................................11

*Tripp v. DOD*,
   193 F. Supp. 2d 229 (D.D.C. 2002) ................................................................................17

*United States v. Mitchell*,
   463 U.S. 206 (1983) .......................................................................................................11

*U.S. Army Corps of Eng'rs v. Hawkes Co, Inc.*,
   578 U.S. 590 (2016) ................................................................................................ 12, 14

*Westcott v. McHugh*,
   39 F. Supp. 3d 21 (D.D.C. 2014) ....................................................................................17

*Youkelsone v. FDIC*,
   910 F. Supp. 2d 213 (D.D.C. 2012) ................................................................................10

**Executive Orders**

Executive Order 14,158 ................................................................................................ 1, 2, 3

**Federal Constitution and Statutes**

5 U.S.C. § 552a ................................................................................................ 10, 11, 16, 17

5 U.S.C. § 704 ..............................................................................................................15

26 U.S.C. § 6103 ..........................................................................................................10

26 U.S.C. § 7431 ...................................................................................................... 11, 18

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12 ..........................................................................................................19

**Other Sources**

GAO Report, *Department of Education: Preliminary Results* (Sept. 24, 2024) ............................2

James Kvaal, *How the FAFSA Got Back on Track*, Inside Higher Ed (Jan. 13, 2025) ........................2

Restatement 2d of Torts § 652D ................................................................................. 8, 9

## INTRODUCTION

Plaintiff filed this suit to challenge data-access policies at the Department of Education. An early motion for emergency injunctive relief failed, because Plaintiff had not shown actual or certainly impending irreparable harm. A subsequent motion for expedited discovery was also denied. Consistent with the Court's order denying discovery, Defendants filed the administrative record yesterday, on April 7.

The Court may nevertheless sidestep these facts, and look only to the complaint to conclude that Plaintiff does not have a case. To start, the Court lacks subject-matter jurisdiction—first and foremost, because Plaintiff does not have standing, a conclusion strengthened by the Fourth Circuit's stay pending appeal of a preliminary injunction just yesterday in a District of Maryland suit raising materially identical data-access claims. *See Am. Fed'n of Teachers v. Bessent*, No. 25-1282, slip op. at 6 (4th Cir. Apr. 7, 2025) (Agee, J., concurring in grant of stay pending appeal); *id.*, slip op. at 9-12 (Richardson, J., concurring in grant of stay pending appeal). The Court also lacks subject-matter jurisdiction because Defendants are immune. Dismissal is merited on either of these bases alone. But if the Court disagreed, it should still dismiss the case for failure to state a claim. Plaintiff has brought suit under the APA, which requires final agency action and the absence of adequate alternative remedies for a suit to survive a motion to dismiss. Plaintiff has pleaded neither.

## BACKGROUND

### I.    The United States DOGE Service and the Department of Education

On January 20, 2025, President Trump signed Executive Order 14,158, which directs changes to the previously established United States Digital Service in order to implement the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology ("IT") systems." 90 Fed. Reg. 8,441, § 4 ("USDS E.O."). The USDS E.O. also redesignated the United States Digital Service as the U.S. Department of

Governmental Efficiency Service, or U.S. DOGE Service ("USDS"), and moved it out of the Office of Management and Budget, establishing it as a standalone component in the Executive Office of the President. *Id.* § 3(a). Similarly, it established a "U.S. DOGE Service Temporary Organization" within USDS pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026. USDS E.O. § 3(b). Agency heads are required under the USDS E.O. to establish within their respective agencies a DOGE Team of at least four employees, which may include Special Government Employees. *Id.* § 3(c).

The USDS E.O. directs USDS to collaborate with Executive agencies to modernize the technology and software infrastructure of the federal government to increase efficiency and productivity as well as ensure data integrity. *Id.* § 4. As in other federal agencies, the need for technical reform in the U.S. Department of Education is pronounced. In a September 2024 report, for example, the Government Accountability Office identified numerous errors plaguing the agency's system for applying for federal student aid, with resulting errors in estimations of students' aid eligibility. *See* GAO Report, *Department of Education: Preliminary Results Show Strong Leadership Needed to Address Serious Student Aid System Weaknesses* (Sept. 24, 2024), *available at* https://www.gao.gov/assets/gao-24-107783.pdf; *see also* James Kvaal, *How the FAFSA Got Back on Track*, Inside Higher Ed (Jan. 13, 2025), *available at* https://www.insidehighered.com/opinion/views/2025/01/13/how-fafsa-got-back-track-opinion ("The Education Department's problematic history of outsourcing key [technology] functions meant we did not have the in-house expertise—like the product managers, software developers, designers and other experts—that any organization needs to guide such a complex technology project…[and] we needed to build a team quickly…[so] we recruited talent from [] the U.S. Digital Service.").

To accomplish its objectives, the USDS E.O. directs USDS to work with relevant agency heads, and vice versa, to ensure USDS has access to "unclassified agency records, software systems,

and IT systems" to the "extent consistent with law." *Id.* § 4(b). At all times, the USDS E.O. instructs, USDS must "adhere to rigorous data protection standards." *Id.*

Consistent with the USDS E.O., several federal employees joined the Department of Education in the early days of the second Trump Administration to carry out the President's instructions at that agency. *See* Compl. ¶ 52.[1]

## II.    This Litigation

Plaintiff, a California nonprofit association representing undergraduate students at University of California campuses, filed its complaint on February 7. *See* Compl. ¶ 15, ECF No. 1. The complaint names the Secretary of Education and the Department she leads as defendants. *Id.* ¶¶ 16-17. Invoking the APA, *id.* ¶¶ 58, 65, 68, Plaintiff seeks a declaration "that Defendants acted unlawfully by giving DOGE-affiliated individuals—or other individuals not authorized by law to view [Department of Education] records that contain personal information—access to those records," *id.* at 18 ("Prayer for Relief: A."). Underlying the allegation of unlawful access is the theory that the Privacy Act and Internal Revenue Code bar recent hires at the Department from accessing systems containing information subject to the protections of those laws. *Id.* ¶¶ 59-60. Plaintiff also alleges that Defendants acted arbitrarily and capriciously in granting those hires access to Department systems. *Id.* ¶ 67. Plaintiff supplements its requested declaration with a request for injunctive relief to prevent Defendants from providing "DOGE-affiliated individuals" with further access to information

---

[1] At the motion-to-dismiss stage, the Court's factual review is generally limited to the complaint. *See Jerome Stevens Pharmaceuticals, Inc. v. FDA*, 402 F.3d 1249, 1250 (D.C. Cir. 2005) (citation omitted). Defendants nevertheless dispute Plaintiff's characterization of the number of the federal employees "affiliated with DOGE," Compl. ¶ 52, as well as Plaintiff's implication that those individuals are not employees of the Department of Education for relevant purposes. Here, Defendants intend solely to rely on common factual ground: that the Department has within it federal employees working to carry out the President's DOGE Agenda.

covered by the two statutes cited, and to prevent further dissemination or use of information already obtained. *Id.* at 18 ("Prayer for Relief: B-E.").

Several days after filing its complaint, Plaintiff moved the Court for a temporary restraining order "enjoining Defendants . . . from disclosing information about individuals to individuals affiliated with the so-called Department of Government Efficiency (DOGE), and enjoining Defendants to retrieve and safeguard any information that has already been obtained by and shared or transferred by DOGE or individuals associated with it." TRO Mot. at 1, ECF No. 9. The Court denied Plaintiff's motion on February 18, on the basis that Plaintiff had not shown actual or impending irreparable harm. Order Denying TRO at 9-13, ECF No. 20. In particular, the Court reasoned that "courts have declined to find irreparable injury where the challenged disclosure is not 'public,' but involves individuals obligated to keep it confidential." *Id.* at 10.

Two weeks after the Court denied Plaintiff's motion for a temporary restraining order, Plaintiff filed a motion for expedited discovery, seeking to uncover evidence of the irreparable harm it failed to show in the first instance. *See generally* Mot. for Expedited Disc., ECF No. 24. The Court denied that relief and ordered Defendants to produce an administrative record. Order Denying Expedited Disc., ECF No. 31. Defendants did so yesterday, on April 7. Administrative Record, ECF No. 32.

## LEGAL STANDARDS

Federal courts are courts of "limited subject-matter jurisdiction" and have the power "to decide only those cases over which Congress grants jurisdiction." *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012) (citing *Micei Int'l v. Dep't of Comm.*, 613 F.3d 1147, 1151 (D.C. Cir. 2010)). "Absent subject-matter jurisdiction over a case, the court must dismiss it." *Leopold v. Manger*, 630 F. Supp. 3d 71, 76 (D.D.C. 2022).

To survive a Rule 12(b)(1) motion, the party asserting subject matter jurisdiction—here, Plaintiff—bears "the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C.

Cir. 2024) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). In considering

assertions of subject matter jurisdiction, courts "assume the truth of all material factual allegations in

the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences

that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C.

Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). At the same time, however,

courts "need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts

alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions." *Arabzada v. Donis*,

725 F. Supp. 3d 1, 9 (D.D.C. 2024) (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C.

Cir. 2015)).

Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for Plaintiff's

failure to state a claim upon which relief can be granted. The standard under Rule 12(b)(6) is a familiar

one, in which a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)). In supporting their claims, plaintiffs must go beyond "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements" as such

barebones pleadings "do not suffice." *Id.*

Defendants bear the burden of establishing that Rule 12(b)(6) dismissal is appropriate. *Postal

Police Officers Ass'n v. United States Postal Serv.*, 719 F. Supp. 3d 56, 61 (D.D.C. 2024). In reviewing a

motion to dismiss, the Court takes "the operative complaint's well-pleaded factual allegations as true

and draw[s] all reasonable inferences in the [plaintiff's] favor." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d

1244, 1249 (D.C. Cir. 2020). But the Court's "'role is not to speculate about which factual allegations

are likely to be proved after discovery.'" *Ho v. Garland*, 106 F.4th 47, 55 (D.C. Cir. 2024) (quoting

*Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015)). Rather, it is "to decide whether

[a plaintiff's] 'alleged facts that, taken as true, render his claim . . . plausible.'" *Id.* (quoting *Harris*, 791 F.3d at 70).

## ARGUMENT

This suit suffers from two foundational defects related to subject-matter jurisdiction. First, Plaintiff has not plausibly alleged that it has associational standing. Second, federal sovereign immunity has not been waived as to Defendants. Independently, two threshold obstacles under the APA mean that Plaintiff has not stated a claim to relief: Plaintiff has not identified final agency action, and it has adequate alternative remedies under the statutes it claims have been violated. For any or all of those reasons, this suit should be dismissed.

## I.      The Court Lacks Subject-Matter Jurisdiction.

### a.   Plaintiff lacks standing.

The complaint relies exclusively on an associational standing theory, *see* Compl. ¶ 56-57, which requires Plaintiff to show that "(1) at least one of [its] members has standing to sue in her or his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of an individual member in the lawsuit." *Elec. Privacy Inf. Ctr. v. U.S. Dep't of Comm.*, 928 F.3d 95, 101 (D.C. Cir. 2019) (citations omitted). Plaintiff has not adequately pleaded these requirements. *See Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 40 (D.D.C. 2018) (Moss, J.)

#### i.   Plaintiff's members are not plausibly injured.

To establish associational standing, Plaintiff must first show that its individual members have suffered injury-in-fact—"actual or imminent, not speculative" harm, "meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). If the injury has not come to pass, it must be "certainly impending," "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). And it must

be "concrete—that is, real, and not abstract." *TransUnion v. Ramirez*, 594 U.S. 413, 424 (2021) (citations omitted). Even where a plaintiff alleges that a statute has been violated, the plaintiff must nevertheless also allege a real-world harm with a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *TransUnion*, 594 U.S. at 417 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016)); *see Gadelhak v. AT&T Servs.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) ("[W]hen *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a 'close relationship' in kind, not degree." (citation omitted)); *Am. Fed'n of Teachers v. Bessent*, No. 25-1282, slip op. at 5 (4th Cir. Apr. 7, 2025) (Agee, J., concurring).

Plaintiff's theory of injury-in-fact to its members is based on the premise that those members provided the Department of Education "sensitive personal information," Compl. ¶ 56, and that "Defendants' actions have harmed UCSA's members by depriving them of the privacy protections guaranteed by federal law and, consequently, the ability to decide for themselves whether DOGE should be able to obtain and use their personal data for unknown reasons," *id.* ¶ 57.[2] Restated, Plaintiff claims harm to its members because of (1) disclosure of their information and (2) violation of their reasonable expectations regarding how their data might be used. Neither theory has merit.

In the context of alleged intangible harms like disclosure of personal information, the Supreme Court has made explicit that cognizable injuries are limited to those "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," *TransUnion*, 594 U.S. at 425 (surveying common-law privacy torts and looking to "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury"). And intra-governmental disclosure of

---

[2] The complaint omits a version of Plaintiff's standing theory that appeared in its motion for a temporary restraining order—namely, standing arising from the risk of identity theft and related risks—that the Court described as "entirely conjectural" in its order denying injunctive relief. Order Denying TRO at 11-12. Because that theory does not appear in the complaint, Defendants do not address it here.

personal information has no such relationship, particularly where, as here, Plaintiff has pleaded no

facts that might overcome the presumption of regularity that attaches to government actions. *See*

*FDA v. Wages & White Lions Invs., LLC*, No. 23-1038, 604 U.S. ----, 2025 WL 978101, at *17 (Apr. 2,

2025) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)).

Crucially, Plaintiff has not pleaded that its members' private information has been (or is at

imminent risk of being) *publicly* disclosed.[3]   Instead, it has pleaded only that some government

employees have had access to information that private individuals submitted to the government. *See*

Compl. ¶¶ 47-55.  That context matters. *See Thompson v. Trump*, 590 F. Supp. 3d 46, 71 (D.D.C. 2022)

(distinguishing between sufficiency of emotional harm as a standing predicate for common-law claims

and for statutory claims).  "[T]he common law private tort of disclosure of private facts" requires

"publicity." *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1048 (N.D. Cal. 2022); see *also Hunstein v.*

*Preferred Coll. & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240, 1245-50 (11th Cir. 2022) (en banc) (no

cognizable injury from disclosure of private information where plaintiff's information was sent from

hospital to collection agency because disclosure was not public); *id.* at 1246 (citing cases); *Farst v.*

*AutoZone, Inc.*, 700 F. Supp. 3d 222, 231-32 (M.D. Pa. 2023); Rest. 2d of Torts § 652D ("Publicity

given to private life"); *see also TransUnion*, 594 U.S. at 434 n.6 ("Many American courts did not

traditionally recognize intra-company disclosures as actionable publications for purposes of the tort

of defamation." (citations omitted)).  Nor has Plaintiff pleaded that limited disclosure within the

---

[3] Notably, this is not a data breach case, where a breach by an outside intruder (and thus public disclosure) has already occurred. *See In re OPM Data Sec. Breach Litig.*, 928 F.3d 42, 55 (D.C. Cir. 2019) (per curiam).  Rather, even taking Plaintiff's allegations as true, there has merely been, at most, intra-governmental information exchange. *Barclift v. Keystone Cred. Servs., LLC*, 585 F. Supp. 3d 748, 758-59 (E.D. Pa. 2022) ("Even assuming that the employees of the mailing vendor read Barclift's personal information, sharing her personal information with 'a small group of persons is not publicity.'" (citation omitted)), *aff'd*, 93 F.4th 136, 146 (3d Cir. 2024) ("Like our sister circuits, we conclude that the harm from disclosures that remain functionally internal are not closely related to those stemming from public ones.").

government would be "highly offensive" to a reasonable person, taking its allegations outside the ambit of the tort of intrusion upon seclusion. *See* Rest. (Second) of Torts § 652B. Because elements analogous to those of common law privacy torts have not been pleaded, Plaintiff's disclosure theory fails.

Plaintiff's second theory, that its members' expectations regarding the use of their personal information have been violated, is neither legally cognizable nor supported by precedent. While "[v]arious intangible harms can . . . be concrete," *TransUnion*, 594 U.S. at 425, when faced with a theory of such harm, the court must inquire into the existence of a relationship between the claim and the harms traditionally recognized as compensable in American courts, including (and particularly) for disclosure-related harms. *Id.* Were it enough for a plaintiff to establish standing simply by alleging that the holder of her personal information used it in a manner contrary to her expectations, the requirement to find a traditionally cognizable harm (including with reference to common-law analogues) would be obliterated. *See generally id.*

Framed another way, Plaintiff's members' "reasonable expectations" theory is simply a restated theory that defendants have violated privacy laws. The Supreme Court's decision in *TransUnion*, however, leaves no doubt that a statutory violation is not, by itself, a cognizable Article III injury. *Id.* at 426-27. Rather, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that . . . defendant over that violation in federal court. *Id.* at 427 (emphasis in original).

### ii.  Plaintiff's suit is not germane to its associational purposes.

Success on an associational standing theory also requires Plaintiff to show germaneness between the interests it seeks to protect and its organizational purpose. "Germaneness is required for 'the modest yet important' purpose of 'preventing litigious organizations from forcing the federal courts to resolve numerous issues as to which the organizations themselves enjoy little expertise and

about which few of their members demonstrably care.'" *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 597 (D.C. Cir. 2015) (quoting *Humane Soc'y of the United States v. Hodel*, 820 F.2d 45, 58 (D.C. Cir. 1988)).

Plaintiff has not even pleaded facts relevant to germaneness.  Because it bears the burden of proving standing, *see Jenkins*, 123 F.4th at 1347, that failure alone is sufficient to dismiss the complaint. Even if the Court were to look outside the complaint to facts of which it may take judicial notice, *see Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 221 (D.D.C. 2012), there are strong reasons to doubt that germaneness exists.  Plaintiff's website describes its "mission" as "[t]o empower and develop students to champion accessibility, affordability, and quality within the University of California system for current and future students in a way that centers equity for all and prepares them to impact the world." *About*, UC Stud. Ass'n, https://ucsa.org/about/ (last accessed Apr. 4, 2024).  On its own terms, that mission is inward-looking and targeted at the student body on University of California campuses— not externally focused on federal agencies' handling of personal data.  Likewise, there is little reason to suspect (and Plaintiff offers none) that Plaintiff has "expertise" in the Privacy Act or Internal Revenue Code, nor that the tens of thousands of students it represents "demonstrably care" about the Department of Education's provision of data access to government employees in the course of their work.  *See Ctr. for Sustainable Econ.*, 779 F.3d at 597.

### iii.  Participation of individual members is required.

Plaintiff also lacks standing because the participation of individual members is necessary.  *See Elec. Privacy Inf. Ctr.*, 928 F.3d at 101.  Plaintiff's APA claims are—inappropriately—premised on violations of the Privacy Act and tax return privacy statutes.  See 5 U.S.C. § 552a; 26 U.S.C. § 6103. But these statutes—which do not provide for injunctive relief in this context—require specific disclosures with respect to specific persons; in other words, the violations themselves are individualized.  *See, e.g.*, 26 U.S.C. § 7431(a) (providing for a "civil action for damages" in the event of improper inspection or disclosure of a tax return or return information "with respect to a taxpayer");

5 U.S.C. § 552a(g)(4) (providing for a damages suit with recovery based on the "actual damages sustained by the individual"). Because these statutes require "individualized determinations" to establish violations, the participation of individual members is required—and Plaintiff lacks associational standing. *See, e.g., Travelers United, Inc. v. Hyatt Hotels Corp.*, No. 23-cv-2776 (CKK), 2025 WL 27162, at *12 (D.D.C. Jan. 3, 2025) (rejecting associational standing claim when "individualized determinations" were required). Indeed, precisely because organizations and associations cannot statutorily bring Privacy Act or § 6103 claims—because those claims are specific and personal to individual persons—they should not be permitted to side-step those requirements here.

### b. Defendants are immune from suit.

Apart from standing, Plaintiff's suit suffers from an additional jurisdictional defect: Defendants enjoy sovereign immunity from suit. *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017) (sovereign immunity is jurisdictional). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (footnote omitted). The United States' immunity generally extends to its agencies and officers acting in their official capacity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (agencies); *Larson v. Domestic & Foreign Comm. Corp.*, 337 U.S. 682, 687-88 (1949) (recognizing that a suit for specific relief against a federal official acting in his official capacity is a suit against the sovereign).

The APA, under which Plaintiff brings suit, abrogates federal sovereign immunity, *see* 5 U.S.C. § 702—but not for all claims. That waiver expressly does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." As the Supreme Court has stated, the purpose of this carve-out waiver is to prevent plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). "When Congress has dealt in particularity with

a claim and has intended a specified remedy—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Id.*

Part II, *infra*, details how the Privacy Act and Internal Revenue Code, alleged breaches of which form the basis for Plaintiff's APA claims here, *see* Compl. ¶¶ 58-70, establish a comprehensive remedial scheme. Because Congress has set out the exclusive remedies for any such violations, the APA does not provide a waiver of sovereign immunity.

## II.    Plaintiff Has Not Stated an APA Claim.

The defects in Plaintiff's asserted cause of action under the APA also merit dismissal, under Rule 12(b)(6). *See Pub. Citizen v. U.S. Dist. Ct. for the Dist. of Columbia*, 486 F.3d 1342, 1345 (D.C. Cir. 2007). Plaintiff alleges that "Defendants have implemented a continuous and ongoing system for disclosing the records of Plaintiff's members to DOGE members or staff without obtaining their consent." Compl. ¶¶ 61-63 (Count I); *id.* ¶ 67 (Count II). By "system," Plaintiff apparently means the provision of access by the Department of Education to its employees to carry out their day-to-day responsibilities. *E.g., id.* ¶ 70 (Count III); *id.* ¶¶ 9, 11, 12, 48, 53, 54. That is not a "system," it is routine agency administration—and thus there is no final agency action to undergird this suit. Alternatively, Plaintiff has adequate alternative remedies under the Privacy Act and Internal Revenue Code for the violations it alleges have occurred. For either or both of these reasons, if the Court concluded it had subject-matter jurisdiction, it should nevertheless still dismiss the complaint.

### a.    Plaintiff has not challenged final agency action.

APA review is limited to "final agency action." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004) (quoting 5 U.S.C. § 704) ("*SUWA*"). While the complaint is not entirely clear on the point, Plaintiff's theory appears to be that the relevant action is the agency's provision of access to its technical systems and databases. *See* Compl. ¶¶ 11 (describing "Defendants' action granting DOGE-affiliated individuals continuous and ongoing access to that information"), 53 ("At least some of these

DOGE staffers have reported 'gained access to multiple sensitive internal systems'"); Mot. at 24 ("Defendants' action giving DOGE access to ED's records is contrary to law and in excess of their statutory authority").

Even assuming that is true, Plaintiff has not established that giving a new employee access to his or her computer is "final agency action" reviewable under the APA. Agency action is final only when it "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

As a matter of common sense, it is difficult to understand how providing a new employee with computer access necessary to his functions "consummat[es]" the hiring agency's decisionmaking process in any formal sense. *Hawkes Co.*, 578 U.S. at 597. And "informal" agency actions, as a general matter, have not been considered "final" under *Bennett*'s first prong. *See Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (citing *Abbott Laby's v. Gardner*, 387 U.S. 136, 151 (1967)). Nor is it apparent (and Plaintiff does not explain) how an employee being able to access a system and the data therein has "direct and appreciable legal consequences" for anyone at all. *See Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 640 (D.C. Cir. 2019). To establish finality, Plaintiff would need to show (at the very least) that its members' data has, in fact, been improperly disclosed (including to the Department of Education DOGE Team)—not just that the Team had access to it. By analogy, an agency's decision to give an employee a work computer is not itself final agency action, even if the employee might conceivably use the computer to effect final agency action (*e.g.*, in approving or denying benefits). Because finality is analyzed from a "pragmatic" point of view, these facial oddities seriously undermine Plaintiff's claim that it exists here. *See Hawkes Co.*, 578 U.S. at 599.

Precedent confirms what pragmatism suggests—not only that the provision of data access challenged here is not final agency action, but that it is not agency "action" at all. Indeed, "broad programmatic attack[s]" like Plaintiff's fall categorically outside the ambit of judicial review under § 704. *See SUWA*, 542 U.S. at 64. In *Lujan v. National Wildlife Federation*, the plaintiffs challenged an agency's "land withdrawal review program" in its entirety. 497 U.S. 871, 890 (1990). That challenge could not proceed, the Supreme Court held, because the "program" did "not refer to a single [agency] order or regulation, or even to a completed universe of particular [agency] orders and regulations." *Id.* Instead, the "program" was "simply the name by which [the plaintiffs] have occasionally referred to the continuing (and thus constantly changing) operations of the [agency] in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans as required by" federal law. *Id.*

Plaintiff's challenge to the Education employees' "access" is deficient in similar ways. Despite how it is framed, an "action giving" certain employees "access to ED's records," Mot. at 24, is not in fact a single, discrete event with legal consequences for Plaintiff's members. It is rather the name by which Plaintiff refers to the Department's "continuing (and thus constantly changing) operations," which include taking various steps to modernize and strengthen protections for its data systems. *See Nat'l Wildlife Federation*, 497 U.S. at 890.

Limiting judicial review to final agency action in circumstances like those at issue in *National Wildlife Federation*—and at issue here—preserves "the APA's conception of the separation of powers." *City of New York v. DOD*, 913 F.3d 423, 431 (4th Cir. 2019). As *National Wildlife Federation* recognizes, one facet of that conception arises out of respect for the democratic process. 497 U.S. at 891 (A plaintiff may not "seek *wholesale* improvement of [an agency's] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made." (emphasis added)). And another, equally important facet recognizes the limits of

judicial resources.  *See City of New York*, 913 F.3d at 431 ("[Courts] are woefully ill-suited, however, to adjudicate generalized grievances asking us to improve an agency's performance or operations.  In such a case, courts would be forced either to enter a disfavored "obey the law" injunction, or to engage in day-to-day oversight of the executive's administrative practices. Both alternatives are foreclosed by the APA, and rightly so." (internal citation omitted)).  Those concerns are directly relevant to this case, where Plaintiff seeks "a general review" of the Department's "day-to-day operations." *See Nat'l Wildlife Federation*, 497 F.3d at 899.

      **b.  Plaintiff has an adequate alternative remedy.**

      Plaintiff's APA claims fail for the additional, independent reason that the APA does not grant a cause of action where there is "[an]other adequate remedy in any court." 5 U.S.C. § 704.  This statutory provision "makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  Accordingly, a plaintiff has adequate relief—and thus cannot avail herself of § 704— "'where a statute affords an opportunity for *de novo* district-court review' of the agency action." *Garcia v. Vilsack*, 563 F.3d 519, 522-23 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005)).  Stated differently, where an agency action is subject to review in some manner under a statutory review scheme, then the general rule is that action must be reviewed within the confines of that scheme.  The mode of review established by the statutory review scheme is presumed exclusive.  This is true even where a statutory review scheme only provides for review of issues by certain parties; other parties are presumptively precluded from obtaining review of those issues under the APA.  *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984) ("[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded."); *see also Dew v. United States*, 192 F.3d 366,

372 (2d Cir. 1999). It is also true even where the plaintiff may not succeed on the merits of her claim under the alternative statutory review procedure; the existence of that procedure alone suffices. *See Rimmer v. Holder*, 700 F.3d 246, 261-62 (6th Cir. 2012); *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11 CIV. 0846 (RJD) (JMA), 2012 WL 1940845, at *6 (E.D.N.Y. May 29, 2012) (reasoning that an alternative was adequate "whether or not relief is ultimately granted").

Under these principles, Plaintiff is not entitled to challenge purported violations of the Privacy Act and the Internal Revenue Code under the APA, because each statute provides an adequate alternative remedy for persons entitled to sue under those statutes.

### i. Privacy Act of 1974

The Privacy Act establishes "a comprehensive and detailed set of requirements" for federal agencies that maintain systems of records containing individuals' personal information, *FAA v. Cooper*, 566 U.S. 284, 287 (2012), and authorizes adversely affected individuals to bring suit for violations of those requirements, 5 U.S.C. § 552a(g)(1)(D). The Privacy Act applies only to individuals, not corporate or organizational entities. 5 U.S.C. §552a(g)(1)(D) (authorizing a cause of action for adversely affected "individuals"); *id.*, §552a(a)(2) (defining "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence."). Although Plaintiff purports to sue on behalf of its members' interests, the fact that it could not bring its own Privacy Act claim underscores that it should not be permitted to circumvent statutory limits through the APA.

Relief under the Privacy Act is carefully circumscribed. Civil remedies are available—and thus the United States' sovereign immunity has been waived—in four circumstances: (1) when the agency "makes a determination . . . not to amend an individual's record in accordance with his request," (an "Amendment Action"), 5 U.S.C. § 552a(g)(1)(A), (2) when the agency refuses to comply with an individual's request for access to her records, (an "Access Action"), *id.* § 552a(g)(1)(B), (3), when the agency fails to maintain an individual's records "with such accuracy, relevance, timeliness, and

completeness" as is necessary for a government action and "consequently a determination is made which is adverse to the individual," (a "Benefits Action"), *id.* § 552a(g)(1)(C), or (4) where the government "fails to comply with any other provision of this section . . . in such a way as to have an adverse act on an individual," (an "Other Action"), *id.* § 552a(g)(1)(D). For Benefits Actions or Other Actions, a plaintiff may be entitled to "actual damages sustained by the individual as a result of the refusal or failure," subject to a $1,000 statutory minimum, but only if the "agency acted in a manner which was intentional or willful" and if that plaintiff could prove "actual damages," which is "limited to proven pecuniary or economic harm." *Cooper*, 566 U.S. at 291, 299.

Beyond these monetary damages, the Act allows for injunctive relief in only two narrow circumstances: (1) to order an agency to amend inaccurate, incomplete, irrelevant, or untimely records of an individual, 5 U.S.C. § 552a(g)(1)(A), (g)(2)(A); and (2) to order an agency to allow an individual access to his records, *id.* § 552a(g)(1)(B), (g)(3)(A). Injunctive relief, as the D.C. Circuit has recognized, is not available for any other situation arising out of the Privacy Act. *See Sussman v. U.S. Marshal Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) ("We have held that only monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs . . . .") (citing *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988)); *see also Cell. Assocs., Inc. v. NIH*, 579 F.2d 1155, 1161-62 (9th Cir. 1978).

Given the Privacy Act's comprehensive remedial scheme, courts have repeatedly recognized that "a plaintiff cannot bring an APA claim to obtain relief for an alleged Privacy Act violation." *Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014); *see also Tripp v. DOD*, 193 F. Supp. 2d 229, 238 (D.D.C. 2002); *Poss v. Kern*, No. 23-cv-2199, 2024 WL 4286088, at *6 (D.D.C. Sept. 25, 2024) (citing cases). That is consistent with the principle that "[w]here [a] 'statute provides certain types of equitable relief but not others, it is not proper to imply a broad right to injunctive relief.'" *Parks v. IRS*, 618 F.2d 677, 84 (10th Cir. 1980) (citing *Cell. Assocs.*, 579 F.2d at 1161-62). This is especially true with the Privacy Act because Congress "link[ed] particular violations of the Act to particular remedies

17

in a specific and detailed manner[,]" which "points to a conclusion that Congress did not intend to authorize the issuance of [other] injunctions." *Cell. Assocs.*, 579 F.2d at 1158-59.

Indeed, as the Ninth Circuit concluded, were injunctive relief available for violations of the Privacy Act generally, "the detailed remedial scheme adopted by Congress would make little sense. We think it unlikely that Congress would have gone to the trouble of authorizing equitable relief for two forms of agency misconduct and monetary relief for all other forms if it had intended to make injunctions available across the board." *Id.* at 1160. Plaintiff's efforts to obtain an agency-wide injunction on both information sharing and personnel actions by channeling Privacy Act claims through the APA would be an end-run around these common-sense principles and should be rejected.

### ii. Internal Revenue Code

For similar reasons, it would be inappropriate to allow Plaintiff to use the APA to circumvent the remedial scheme provided in the Internal Revenue Code for violations of 26 U.S.C. § 6103. Congress created a waiver of sovereign immunity for violations of § 6103 by authorizing only civil damages against the United States, at 26 U.S.C. § 7431. Specifically, § 7431 authorizes a right of action against the United States if "any officer or employee of the United States knowingly, or by reason of negligence, . . . discloses any return or return information . . . in violation of section 6103." 26 U.S.C. § 7431(a)(1). Damages are authorized in the sum of "the greater of" (a) $1,000 for each unauthorized disclosure of a return or return information, or (b) the actual damages sustained by the plaintiff plus punitive damages for willful disclosures or disclosures that result from gross negligence. *Id.* § 7431(c). Civil damages under § 7431 are the sole remedy that Congress provided for a violation of § 6103, and it does not authorize injunctive relief. *See generally id.*; *see also Henkell v. United States*, No. 96-cv-2228, 1998 WL 41565, at *5 (E.D. Cal. Jan. 9, 1998) (explaining that § 7431 does not authorize injunctive relief).

Given the civil damages available to individuals whose return information is disclosed in violation of § 6103—which is part of the complex statutory scheme Congress created in the Internal Revenue Code—there is another adequate remedy available, and Plaintiff is not entitled to injunctive relief through the APA. *Cf. Agbanc Ltd. v. Berry*, 678 F. Supp. 804, 807 (D. Ariz. 1988) (concluding that § 7314 provides an adequate remedy at law that precludes equity jurisdiction).

## CONCLUSION

Defendants respectfully request that the Court dismiss this case under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).  A proposed order is enclosed for the Court's convenience.

Dated: April 8, 2025                          Respectfully submitted,

                                              YAAKOV M. ROTH
                                              Acting Assistant Attorney General

                                              ELIZABETH J. SHAPIRO
                                              Deputy Branch Director
                                              Federal Programs Branch

                                              */s/ Simon G. Jerome*
                                              SIMON G. JEROME
                                              D.C. Bar. No. 1779245
                                              Trial Attorney
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L Street, N.W., Twelfth Floor
                                              Washington, D.C. 20005
                                              Tel: (202) 514-2705
                                              Email: simon.g.jerome@usdoj.gov

                                              *Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNIVERSITY OF CALIFORNIA
STUDENT ASSOCIATION,

*Plaintiff,*

v.

LINDA McMAHON, in her official capacity
as Acting Secretary of Education, *et al.,*

*Defendants.*

Case No. 1:25-cv-00354-RDM

---

**[PROPOSED] ORDER ON MOTION TO DISMISS**

Before the Court is Defendants' motion to dismiss, ECF No. 33.  Upon consideration of the

motion and the entire record, it is hereby ordered that the motion is granted, and the case is dismissed.

Date: _____

_____
HON. RANDOLPH D. MOSS
U.S. DISTRICT JUDGE